## PURE OIL CO. v. OKLAHOMA TAX COMMISSION et al.

No. 27056. Sept. 15, 1936.

Rehearing Denied March 23, 1937.

Alvin Richards, for petitioner.

C. D. Cund, C. W. King, and Wendell Barnes, for respondents.

PHELPS, J. This is an original action by the Pure Oil Company, as petitioner, against the Oklahoma Tax Commission, as respondent, seeking a writ of prohibition to prohibit the Oklahoma Tax Commission from collecting motor vehicle taxes from petitioner upon certain motor trucks owned and operated by it upon the highways of the state, which trucks are being designated by respondent as class "C" motor carriers under the provisions of article 12, chap. 20, p. 27, Session Laws of 1935.

The facts are the same as in Pure Oil Co. v. Cornish, 174 Okla. 615, 52 P. (2d) 832. However, that case involved the question of whether petitioner was engaged in a private "commercial" enterprise within the meaning of chapter 156, sec. 1, Session Laws of 1933, and it was held that the petitioner was not so engaged and was not liable for the tax. That case was founded upon the 1933 law, which was amended by the 1935 Legislature so as to include industrial pursuits within the meaning of "commercial enterprises." This amendment, including industrial pursuits, is the reason by which the Oklahoma Tax Commission has been computing the tax, since Pure Oil Company v. Cornish, supra, was limited to the terms of the 1933 act. The pertinent portions of the 1935 act, supra, are as follows (the new portions, which were not contained in the 1933 act, or which were changed, are emphasized):

"An Act amending section 3700, Oklahoma Statutes, 1931, as amended by section 1, chapter 156, Session Laws of 1933, defining and classifying motor carriers; defining the word 'Market' as used in this act, and declaring an emergency.

"Be It Enacted by the People of the State of Oklahoma:

"Section 1. Motor Carriers—Definition. Section 3700, Oklahoma Statutes, 1931, as amended by section 1, chapter 156, Session Laws of 1933, is hereby amended to read as follows:

"Section 3700. (a) The term 'motor vehicle' when used in this act shall mean any automobile, truck, truck-tractor, trailer or semi-trailer or any motor bus or any self-propelled vehicle not operated or driven upon on fixed rails or tracks.

"(b) The term 'motor carrier', when used in this act, means any person, firm, business, trust or corporation, lessee or trustee or receiver, operating any motor vehicle upon any public highway for the transportation of passengers or property for compensation or for commercial purposes, doing an intercity business and not operating exclusively within the limits of an incorporated city or town within this state, and, for the purposes of this act, motor carriers shall be divided into three classes as follows:

"(1) Class 'A' motor carriers shall include all motor carriers operating as common carriers, of persons or property between fixed termini or over a regular route, even though there be periodic or irregular departures from said termini or route; and

"(2) Class 'B' motor carriers shall include all other motor carriers not operating as class 'A' or 'C' motor carriers, whether as private carriers for hire or common carriers for hire, of persons or property; and

"(3) Class 'C' motor carriers shall include all other persons, firms or corporations, their trustees or receivers, engaged in the transportation of property in furtherance of any private commercial enterprise and not operating as a private carrier for hire or as a common carrier for hire, provided, however, the provisions of this act shall not apply to transportation of livestock and farm products in the raw state, logs and rough lumber and which raw state shall include cotton, whether in the seed or ginned, cotton seed, hay, whether loose or baled, corn, wheat, oats, and all other articles produced on the farm, from farm to market, nor to trucks hauling road materials, **or from market to farm where it is incident to the transportation of said articles from farm to market for his own use, where driven by the owner of said truck or an employee.**

**"The word 'market' as used in this section is hereby declared to mean the point at which such aforesaid livestock and farm products in the raw state, logs and rough lumber were first delivered by the producer of such aforesaid livestock and farm products in the raw state, logs and rough lumber, upon his sale thereof; provided, that the terms of this paragraph shall not apply to motor**

vehicles operated as class C carriers, the unladen weight of which is 3500 pounds or less. * * *

"(d) The term 'intercity' as used in this act is defined as describing transportation of either passengers or property, when such transportation is from one incorporated city or town to or through another incorporated city or town or through two or more incorporated cities or towns, regardless of the point of origin or destination.

"(e) The term 'commercial purposes' as used in this act is defined as describing all undertakings entered into for private gain or compensation, including all industrial pursuits, whether such undertakings involve the handling or dealing in commodities for sale or otherwise."

Petitioner's motor trucks are operated over the highways of the state solely for the purpose of carrying oil field equipment; as a general rule, they carry their own property, such as bits, tools, and oil field supplies, from one warehouse or lease to another warehouse or lease owned by them, and in making such trips the trucks usually pass through two or more incorporated cities or towns.

Petitioner's first contention is that the application of the 1935 act or amendment would deny it the equal protection of the law, as guaranteed to it under the 14th Amendment to the federal Constitution. In this connection it is urged that the act is unconstitutional because it is discriminatory, arbitrary, indefinite and impracticable of application.

The point most seriously urged as basis for the claim that the act is arbitrary and discriminatory is that it prescribes a criterion of measurement as to applicability, in the definition of the word "intercity", which has no reasonable relation to the subject thereof; in other words, petitioner cites the familiar rule that classification of persons or businesses as affected must always rest upon some difference which bears a reasonable and just relation to the 'act in respect to which the classification is proposed, and can never be made arbitrarily without such basis. Petitioner contends that the provision making the act applicable to those doing intercity business, as defined in the act, thus exempting those whose trips do not go through two incorporated cities, or from one incorporated city to another, has no relationship to the reason for the levying of the tax, and that it is also discriminatory because it does not levy a tax on those not doing such intercity business.

In Collins-Dietz-Morris Co. v. State Corporation Commission, 154 Okla. 121, 7 P. (2d) 123, 80 A. L. R. 561, we construed the 1929 act, (chapter 253), which by its terms applied to motor carriers "doing an intercity business," though the definition of "intercity" which is contained in the present act was not a part of the 1929 act. The definition of "intercity" which is made by the present act is just such a definition as a reasonable interpretation of the words would indicate, even without any specific definition. The 1935 act has not given any strained or unusual meaning to "intercity", and for that reason our remarks on this subject as contained in Collins-Dietz-Morris Co. v. State Corporation Commission, supra, are still appropriate:

"The act, by its terms, applies to motor carriers 'doing an intercity business', and it does not apply unless the transportation is 'intercity.' The congestion of intercity roads is sufficient reason for the classification."

The sections of the public highways carrying the most and the heaviest traffic, and hence subject to the greatest amount of wear and tear, are the trunk lines which connect the various centers of population, which centers are incorporated cities. Little shipping is done over the secondary road system of the state, and such shipping as does exist on those roads is irregular and consists usually of light vehicles carrying small loads. Too, the upkeep and maintenance of those roads are not so expensive to the state as that on the main paved highways. It was therefore reasonable to make the classification which was contained in the act. We take it that the classification requiring payment of the tax by those doing intercity business was made not so much because of the act of traveling through cities, but was made because the main traveled highways pass through cities, and it was the traffic for private gain on these highways which was intended to be taxed. The Legislature recognized the fact that not all travel should be taxed, yet the line had to be drawn somewhere. It is apparent that the classification requiring the tax to be paid by those traveling the main highways, which is synonymous with "intercity" traffic, was founded in good reason, and is entirely appropriate and bears a proper relationship to the reasons underlying the act.

Petitioner also contends that the act is discriminatory because it exempts from its application the transportation of logs, rough lumber, and ginned cotton. The 1929 act exempted livestock, farm products in the raw state, and trucks hauling road ma-

terial. We held in Collins-Dietz-Morris Co. v. State Corporation Commission, supra, that such was a reasonable provision, and that the distinction shown thereby is justified by the nature of the property to be transported. We see no reason why the addition of ginned cotton and logs and rough lumber to the exempted class should change our former ruling on that question. They are a class of commodity emanating from the same common source, the farm and its allied occupations. The exemption was framed to meet local conditions with respect to farm products and kindred classes of products. Another distinction is that the transportation activities in connection with lumber and other raw products are seasonal, and as a general rule are only of short duration in comparatively light trucks. Very often such hauling is from the farm to the railroad or mill only and not on the main highways in general. It is probable that what use of the main highways is made on these trips is only incidental to the longer portion of the trips. Regulation, control, and maintenance of the main highways, and traffic thereon, are the main purposes of the act, and it is reasonable to exempt traffic not substantially connected therewith.

The second proposition of petitioner is that the act is in fact a revenue raising measure and was passed on the last day of the legislative session in violation of section 33, art. 5, of the Constitution of the state of Oklahoma, and is therefore void. That section provides that all bills for raising revenue shall originate in the House of Representatives, and the Senate may propose amendments to revenue bills, and that no revenue bill shall be passed during the last five days of the session. In Ex parte Tindall, 102 Okla. 192, 229 P. 125, we held that the real purpose of such an act as the instant one is to regulate the use of the highways, instead of raising revenue, and that therefore the section of the Constitution relied upon does not apply. The 15th syllabus of that decision is as follows:

"The real purpose of the act being to regulate the use of public highways * * * a provision in such act requiring payment of a tax or license fee for the privilege of operating such business, such fee or tax being merely incidental to the enforcement of the real purpose of the act, does not render the act void under section 33, art. 5, of the Constitution, which requires all revenue bills to originate in the House of Representatives."

The third proposition of petitioner is that

the title of the act is defective in that it violates article 5, sec. 57, of the Constitution of the state of Oklahoma, which provides that every act of the Legislature shall embrace but one subject which shall be clearly expressed in the title. The title was set forth in the beginning of this opinion. All that was done by the amendment was that the exemption of farm products was changed in its scope, and that certain words contained in the prior act were defined. We do not agree that this was such a departure from the title of the act as should cause the act to be invalidated. It is not necessary that an abstract of the contents of the bill be included in the title. Ex parte Owen, 143 Okla. 8, 286 P. 883. The provision is not to be enforced so narrowly, exactingly, or in so technical a manner as to cripple legislation. Dabney v. Hooker, 121 Okla. 193, 249 P. 381. The title of an act may be general and need not specify every clause in the statute. Leathercock v. Lawter, 45 Okla. 715, 147 P. 324. The title clearly sets forth the designation of the prior act amended, states that it defines and classifies motor carriers and the word "market." It would have been better for the title to also state that the act defined "intercity" and "commercial purposes", but this same purpose was accomplished in the statement contained in the title that the act defined and classified motor carriers. The statement that it defined motor carriers was sufficient to put the members of the Legislature, and the Governor, on notice of what the act contained with reference to including those carriers engaged in industrial pursuits, or to put them on notice that it possibly contained some legislation concerned therewith. No harmful deception is apparent in the title.

It is of course by this time well settled that the state, under the police power for the protection of the public health, safety, welfare, and the promotion of the public good, and the preservation of public property, may regulate the use of motor vehicles on the public highways, whether by common carriers or private carriers, in furtherance of their own private enterprise for profit. Ex parte Tindall, supra; Ex parte Sales, 108 Okla. 29, 233 P. 186; Barbour v. Walker, 126 Okla. 227, 259 P. 552, 56 A. L. R. 1049.

The prayer of the petitioner is denied.

OSBORN, C. J., and RILEY, BUSBY, PHELPS, CORN, and HURST, JJ., concur. BAYLESS, V. C. J., and WELCH, and GIBSON, JJ., dissent.