STATE OFFICERS AND EMPLOYEES Enrolled House Bill 1001, Enrolled House Bill 1002, and Enrolled Senate Bill 1 of the First Extraordinary Session of the Thirty-sixth Legislature do not violate the title requirements contained in Article V, Section 56 and Article V, Section 57, Article V of the Oklahoma Constitution. Enrolled Senate Bill 1 of the First Extraordinary Session of the Thirty-sixth Legislature does not violate the revenue bill requirements contained in Article V, Section 33 of the Oklahoma Constitution. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions: 1. Do Section 23 of House Bill 1001 of the Extraordinary Session of the Thirty-sixth Legislature, Section 6 of House Bill 1002 of the Extraordinary Session of the Thirty-sixth Legislature and Sections 11, 12, 13, 14, 15, and 16 of Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature comply with the title requirements set forth in Article V, Section 56 and Article V, Section 57 of the Oklahoma Constitution? 2. Do Sections 11, 12, 13, 14, 15, and 16 of Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature comply with the revenue bill requirements set forth in Article V, Section 33 of the Oklahoma Constitution? Concerning your first question, Article V, Section 56 of the Oklahoma Constitution provides as follows: "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt . . . All other appropriations shall be made by separate bills, each embracing but one subject." Article V, Section 57 provides in pertinent part as follows: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes . . . ." Enrolled House Bill 1001 of the Extraordinary Session of the Thirty-sixth Legislature is entitled in pertinent part as follows: "AN ACT RELATING TO SCHOOLS; MAKING APPROPRIATIONS TO THE STATE BOARD OF EDUCATION; STATING THE PURPOSES OF THE APPROPRIATIONS MADE; PROVIDING SCHEDULE FOR SUPPORT OF CERTAIN PUBLIC SCHOOL ACTIVITIES; AMENDING 70 O.S. 4-101 [70-4-101] (1971), AS AMENDED BY SECTION 1, CHAPTER 155, O.S.L. 1972, 18-114 AND 18-109, AS LAST AMENDED BY SECTION 17 AND 23, CHAPTER 273, O.S.L. 1976 (70 O.S. 4-101 [70-4-101], 70 O.S. 18-114 [70-18-114] 70 O.S. 18-109 [70-18-109] (1976)); MODIFYING LENGTH OF TERMS AND QUALIFICATIONS FOR OFFICE OF COUNTY SUPERINTENDENTS OF SCHOOLS; PROVIDING FOR ABOLISHMENT OF OFFICE UNDER CERTAIN CONDITIONS. . ." Enrolled House Bill 1002 of the Extraordinary Session of the Thirty-sixth Legislature is entitled in pertinent part as follows: "AN ACT RELATING TO COURTS; MAKING APPROPRIATIONS TO THE OFFICE OF DISTRICT COURTS AND STATING THE PURPOSES; PRESCRIBING LIMITS ON NUMBERS OF EMPLOYEES WITHIN CERTAIN CATEGORIES AND SALARY LIMITS; AUTHORIZING USE OF ALL FUNDS APPROPRIATED FOR FEDERAL MATCHING PURPOSES; ESTABLISHING STATUS OF CERTAIN COURT REPORTERS . . . ." Enrolled Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature is entitled in pertinent part as follows: "AN ACT RELATING TO THE OKLAHOMA TAX COMMISSION AND MAKING APPROPRIATIONS THERETO; STATING THE PURPOSES . . . . AMENDING 47 O.S. 22.22 [47-22.22] (1971), AS AMENDED BY SECTION 42 OF ENROLLED SENATE BILL NO. 265 OF THE 1ST SESSION OF THE 36TH OKLAHOMA LEGISLATURE, WHICH RELATES TO THE APPOINTMENT OF MOTOR LICENSE AGENTS AND COLLECTION OF CERTAIN FEES; MODIFYING CERTAIN PROVISIONS RELATING TO CERTAIN FEES; AMENDING 47 O.S. 22.30 [47-22.30](h) (1971), AS AMENDED BY SECTION 49 OF ENROLLED SENATE BILL NO. 265 OF THE 1ST SESSION OF THE 36TH OKLAHOMA LEGISLATURE, WHICH RELATES TO AGENTS' MOTOR VEHICLE TAX ACCOUNTS AND THE LIABILITY OF AGENTS; MODIFYING THE TYPES OF ACCOUNTS, DEPOSITS MADE AND REPORTING THEREOF; AMENDING 47 O.S. 22.30 [47-22.30](n) (1971), AS AMENDED BY SECTION 55 OF ENROLLED SENATE BILL NO. 265 OF THE 1ST SESSION OF THE 36TH OKLAHOMA LEGISLATURE, WHICH RELATES TO ANNUAL FINANCIAL STATEMENT AND AUDITS; MODIFYING REQUIREMENT THAT AGENTS PURCHASE OR LEASE THROUGH THE FACILITIES OF CENTRAL PURCHASING; AMENDING 47 O.S. 6-101 [47-6-101] (1971), AS LAST AMENDED BY SECTION 60 OF ENROLLED SENATE BILL 265 OF THE 1ST SESSION OF THE 36TH OKLAHOMA LEGISLATURE, WHICH RELATES TO OPERATORS, COMMERCIAL CHAUFFEURS AND CHAUFFEURS LICENSING, FEES, AGENTS AND RENEWALS; MODIFYING CERTAIN PROVISIONS RELATING TO SUCH LICENSE FEES, AGENTS AND RENEWALS; PROVIDING LAPSED DATES; DIRECTING CODIFICATION. . . ." Enrolled House Bills 1001 and 1002, and Enrolled Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature, make appropriations to the agencies stated in the titles of such acts and deal with substantive law changes. We do not view any of these bills as "the general appropriation bill" referred to in Article V, Section 56 and Article V, Section 57. The Legislature in the past consistently enacted a general appropriation bill making appropriations for the basic expenses of the executive, legislative and judicial departments of state government at each regular session of the Legislature until 1953. Since 1953, however, the basic appropriations to the various departments and agencies have been by separate bills and we do not view House Bill 1001, House Bill 1002 or Senate Bill 1, which each provide appropriations to a single agency, i.e. State Board of Education, Office of District Courts, and Oklahoma Tax Commission, as "general appropriation bills," but rather as separate appropriation bills to each of the above-mentioned agencies. The question, therefore, is whether House Bill 1001, House Bill 1002 and Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature are unconstitutional as containing more than one subject. The courts of this state have interpreted very broadly what constitutes one subject within the meaning of the Oklahoma Constitution. In National Mutual Casualty Co. v. Briscoe, 188 Okl. 440,109 P.2d 1088 (1941), it was stated that: "The term `subject' as used in these provisions, is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection . . . To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment could be considered as having any legitimate connection with or relation to the other." Further, all doubt as to the constitutionality of a statute is to be resolved in favor of its validity. See, Ex parte Lee,88 Okl. Cr. 386, 203 P.2d 270 (1949). In looking at Enrolled House Bill 1001, it is obvious that Section 23 relates to the Office of County Superintendent of Schools. Under the rule announced in the Briscoe case, supra, this poses the question of whether or not the Office of County Superintendent of Schools has a logical or natural connection to the general subject of the title of the act. The general subject of the title of the act is "schools". It is obvious that matters relating to the Office of County Superintendent of Schools are included in the single general subject of "schools." In looking at Enrolled House Bill 1002, it is evident that Section 6 relates to the status of court reporters. Under the rule set down in the Briscoe case, supra, the question, therefore, is whether or not matters relating to court reporters have a logical or natural connection to the subject of "courts." Obviously, matters relating to court reporters are included within the single general subject of "courts." In looking at Enrolled Senate Bill 1, it is evident that Section 11 amends 47 O.S. 22.22 [47-22.22] (1971), and relates to the appointment by the Oklahoma Tax Commission of motor license agents and sets out the registration fees collected by such agents and the apportionment of such fees. Section 12 of the Bill, amending 47 O.S. 22.30 [47-22.30](h) (1971), relates to motor vehicle tax accounts of the motor license agents appointed by the Oklahoma Tax Commission, requires certain reporting by such agents to the Tax Commission, requires such agents to relinquish the amounts due to the Commission and provides penalties for the failure to do so. Section 13 of the Bill amends 47 O.S. 22.30 [47-22.30](n) (1971), and relates to annual financial statements and audits of the motor license agents. Section 14 of the Bill amends 47 O.S. 6101 [47-6101] (1971), and relates to the deduction of One Dollar ($1.00) from the total collected for each license or renewal by motor license agents as compensation for operating expenses. Section 15 of the Bill provides for lapse dates for the appropriations in the Bill. Section 16 of the Bill directs codification of Section 9 of the Act as 47 O.S. 22.30 [47-22.30] 1-4. It is obvious from a reading of Sections 11, 12, 13 and 14 of the Bill that the matters covered by those Sections deal with motor license agents appointed by the Oklahoma Tax Commission and set certain terms and requirements on such agents. The matters dealt with in these Sections clearly have a logical and natural connection to the single general subject expressed in the title of the Act, which is "Oklahoma Tax Commission." Section 15 of the Act would likewise be encompassed within the single general subject of the Act since it provides the lapse dates for the appropriations made to the Oklahoma Tax Commission. Section 16 of the Act is not a provision of substantive law but merely a direction to the publisher of the official statutes to codify Section 9 of the Act as 47 O.S. 22.30 [47-22.30] 1-4 of the Oklahoma Statutes; and since Section 9 of the Act clearly relates to the Oklahoma Tax Commission, the subsequent Section 16 directing its codification would be germane to the general subject of the Act. The fact that Enrolled House Bill 1001, having as its general subject "schools", makes an appropriation to the State Board of Education and at the same time deals with substantive law relating to the Office of County Superintendent of Schools, does not result in it being constitutionally infirmed under Article V, Section 56 and Article V, Section 57 of the Oklahoma Constitution. Both the appropriations to the State Board of Education and the substantive section dealing with the Office of County Superintendent of Schools are encompassed in the single general subject of the Act expressed in its title, "Schools." The fact that Enrolled House Bill 1002 makes appropriations to the Office of District Courts and deals with substantive law relating to the status of full-time court reporters does not result in it being constitutionally infirmed under Article V, Section 56 and Article V, Section 57 of the Oklahoma Constitution. Both the appropriations to the Office of District Courts and the substantive section relating to the status of court reporters are encompassed in the single general subject of the Act expressed in its title, "Courts." The fact that Enrolled Senate Bill 1 makes appropriations to the Oklahoma Tax Commission and deals with substantive law relating to the duties, responsibilities, liabilities and requirements imposed upon motor license agents appointed by the Oklahoma Tax Commission does not result in it being constitutionally infirmed under Article V, Section 56 and Article V, Section 57 of the Oklahoma Constitution. Both the appropriations to the Tax Commission and the substantive sections relating to the motor license agents appointed by the Tax Commission are encompassed in the single general subject of the Act expressed in its title, "Oklahoma Tax Commission." Further, in this connection, it should be pointed out that in the case of Rupe v. Shaw,286 P.2d 1094 (Okl. 1955), the case of Hill v. Ray,52 Mont. 378, 158 P. 826, was cited with approval, which upheld as embracing one subject a bill which both created an agency by substantive law and made appropriations thereto. Except as to "the general appropriation bill," the implication is clear that enacting permanent legislation and appropriating money in the same bill does not per se render the bill invalid as embracing plurality of subjects. So long as both the appropriation provisions and the substantive provisions of an act fall within the single general subject of the act, as expressed in its title, there is no violation of Article V, Section 56 or Article V, Section 57 of the Oklahoma Constitution. Based on the foregoing, it does not appear, as a matter of law, that Enrolled House Bill 1001, Enrolled House Bill 1002 or Enrolled Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature are constitutionally infirmed under Article V, Section 56 or Article V, Section 57 of the Oklahoma Constitution. Concerning your second question, Article V, Section 33 of the Oklahoma Constitution, provides as follows: "All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills. No revenue bill shall be passed during the five last days of the session." Enrolled Senate Bill 1 of the Extraordinary Session of the Thirty sixth Legislature originated in the Senate and was passed by the Senate on June 15, 1977, and the House of Representatives on June 17, 1977. The Legislature adjourned the Extraordinary Session on June 17, 1977. The only question left to be resolved, therefore, is whether or not it is a "bill for raising revenue" or a "revenue bill," within the meaning of Article V, Section 33. In order to answer this question, we must analyze the Oklahoma authorities on this subject. The lead case on the subject is Anderson v. Ritterbusch, 22 Okl. 761, 98 P. 1002 (1908), wherein the Oklahoma Supreme Court held in the third syllabus as follows: " 'Revenue bills' are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." (Emphasis added) Subsequent to the decision in the Anderson case, supra, the Court held in Pure Oil Co. v. Oklahoma Tax Commission, 179 Okl. 479, 66 P.2d 1097 (1936), that a bill imposing a tax on motor vehicles doing inter-city business was not a revenue raising measure since its principal purpose was to regulate use of the highways, and was not taxation in a strict sense. Additionally, in Ex parte Tindall, 102 Okl. 192, 229 P. 125 (1924), and Ex parte Sales, 108 Okl. 29, 233 P. 186 (1925), it was held that a bill imposing a license fee to be paid by operators of transportation lines was not a revenue raising bill within the meaning of Article V, Section 33 since its principal purpose was to regulate transportation companies. Further, the prohibition contained in Article V, Section 33 appears to only apply to bills for raising revenue for state government and has no reference to bills which authorize a subdivision of the state to raise revenue, Dickey v. State, ex rel. City of Tulsa, 90 Okl. 106,217 P. 145 (1923). Concerning the distinction between a tax in the strict sense of the word and a license fee or permit fee, Ex parte Shaw, 53 Okl. 654, 157 P. 900 (1916), held that an automobile license fee or permit fee imposed pursuant to city ordinance did not constitute a tax Additionally, in City of Idabel v. School District No. 5 of McCurtain County, 434 P.2d 283 (1967), the Court stated at page 287 as follows: ". . . A general tax is levied for the general public good without regard to possible benefits which may be conferred on the property or the individual taxed. . . ." Section 11 of Enrolled Senate Bill 1 of the Extraordinary Session of the Thirty-sixth Legislature amends 47 O.S. 22.22 [47-22.22] (1971), as amended by Section 42 of Enrolled Senate Bill 265 of the First Session of the Thirty-sixth Legislature, to increase the motor vehicle registration fee from One Dollar and Twenty-five Cents ($1.25) to One Dollar and Seventy-five Cents ($1.75) under the Motor Vehicle License and Registration Act. Of course, from an analysis of the entire Bill, it is evident that this is not the primary or principal purpose of the Bill and that the Bill deals with many other aspects of administration of motor vehicle licensing and registration by the Oklahoma Tax Commission and its motor license agents. It is further evident from an entire reading of the Bill that its amendment of the Motor Vehicle License and Registration Act is the result of the Legislature's exercise of the State's police power to regulate motor vehicle licensing and registration and does not result from the State's taxing power. In view of the foregoing, we cannot conclude, as a matter of law, that Enrolled Senate Bill 1 of the First Extraordinary Session of the Thirty-sixth Legislature contravenes the prohibition contained in Article V, Section 33 of the Oklahoma Constitution. It is, therefore, the opinion of the Attorney General that your questions be answered as follows. Enrolled House Bill 1001, Enrolled House Bill 1002, and Enrolled Senate Bill 1 of the First Extraordinary Session of the Thirty-sixth Legislature do not violate the title requirements contained in Article V, Section 56 and Article V, Section 57 of the Oklahoma Constitution. It is the further opinion of the Attorney General that Enrolled Senate Bill 1 of the First Extraordinary Session of the Thirty-sixth Legislature does not violate the revenue bill requirements contained in Article V, Section 33, of the Oklahoma Constitution. (GERALD E. WEIS)