2000 OK 17

Rep. Kevin CALVEY, Rep. Fred Morgan, Rep. Chris Benge, Rep. Forrest Claunch, Rep. Odilia Dank, Rep. Bill Graves, Rep. Todd Hiett, Rep. Mark Liotta, Rep. John Nancy, Rep. Wayne Pettigrew, Rep. Greg Piatt, Rep. Tim Pope and Rep. Curt Roggow, Appellants/Plaintiffs/Petitioners,

v.

Tom DAXON, in his official capacity as Director of State Finance, and The State of Oklahoma, Appellees/Defendants/Respondents,

Stratton Taylor, President Pro Tempore, Oklahoma State Senate, Appellee/Defendant/Intervenor.

No. 93,903.

Supreme Court of Oklahoma.

March 14, 2000.

Kevin Calvey, Del City, Oklahoma, For Appellants.

Neal Leader, Senior Assistant Attorney General Oklahoma City, Oklahoma, For Appellees.

Lee Slater, Mark H. Ramsey, Oklahoma City, Oklahoma, For Appellee/Intervenor.

¶ 1  KAUGER, J.:

¶ 2  The dispositive issue presented is: whether House Bill 1574 [1] and Senate Bill 165,[2] transferring monies from fee-generated funds [3] to the state's Special Cash Fund,[4] violate the constitutional requirement of the Okla. Const. art. 5, § 33[5] that revenue bills

1. The Director is directed to make the following transfers by House Bill 1574: $4,300,000.00 from the Waste Tire Recycling Indemnity Fund of the Oklahoma Tax Commission to the Special Cash Fund of the State Treasury; $500,000.00 from the Reduction–In–Force Emergency Cost Fund of the Office of State Finance to the Special Cash Fund of the State Treasury; $1,772.995.00 from the Ad Valorem Reimbursement Fund of the Oklahoma Tax Commission to the Special Cash Fund of the State Treasury; $19,400,000.00 from the Capital Improvement Revolving Fund to the Special Cash Fund of the State Treasury.

2. The Director is ordered to make the following transfers by Senate Bill 165: $200,000.00 of the amount of $5,250,432.00 originally appropriated to the Office of Personnel Management to the Special Cash Fund of the State Treasury; $50,-000.00 of the amount of $3,371.499.00 originally appropriated to the Office of State Treasurer to the Special Cash Fund of the State Treasury; $200,000.00 of the amount of $18,309.981.00 originally appropriated to the Department of Commerce to the Special Cash Fund of the State Treasury; $100,000.00 of the amount of $7,112.622.00 originally appropriated to the Department of Central Services to the Special Cash Fund of the State Treasury; $250,000.00 from the Bond Oversight Revolving Fund of the Department of Central Services to the Special Cash Fund of the State Treasury; $400,000.00 from the Revolving Fund of the Office of the Secretary of State to the Special Cash Fund of the State Treasury; $1,297.014.00 from the Public Health Special Fund of the State Department of Health to the Special Cash Fund of the State Treasury; $2,000,000.00 from the Federal Funds of the State Department of Health to the Special Cash Fund of the State Treasury; $300,000.00 from the Banking Department Revolving Fund of the Banking Department to the Special Cash Fund of the State Treasury; $300,000.00 from the Waste Tire Recycling Indemnity Fund of the Tax Commission to the Special Cash Fund of the State Treasury; $50,000.00 from the Mortgage Brokers Recovery Fund of the Consumer Credit Department to the Special Cash Fund of the State Treasury; $1,200,000.00 from the Insurance Commissioner Revolving Fund of the Insurance Commission to the Special Cash Fund of the State Treasury; $100,000.00 from the Oklahoma Certified Real Estate Appraisers Revolving Fund of the Insurance Commission to the Special Cash Fund of the State Treasury; $100,000.00 from the Bailbondsmen Revolving Fund of the Insurance Commission to the Special Cash Fund of the State Treasury; $400,000.00 from the Oklahoma Securities Commission Revolving Fund of the Securities Commission to the Special Cash Fund of the State Treasury; $500,000.00 from the Public Utility Regulation Revolving Fund of the Corporation Commission to the Special Cash Fund of the State Treasury; $200,000.00 from the Corporation Commission Revolving Fund of the Corporation Commission to the Special Cash Fund of the State Treasury.

3. Title 27A Supp.1997 § 2–11–403 [Imposes assessments on sale of tires, a portion of which is allocated to administer the requirements of the Oklahoma Waste Tire Recycling Act under § 2-11–405.]; Title 62 O.S. Supp.1999 § 276.1 [Creates revolving fund for Office of the Secretary of State consisting of fees and monies received for reproduction costs and other miscellaneous receipts.]; Title 63 O.S.1991 § 1–107 [Creates Public Health Special Fund made up of all monies, fees and revenues collected by the State Commissioner of Health or the State Department of Health.]; Title 6 O.S. Supp.1997 § 211.1 [Creates revolving fund for the Banking Department consisting of all monies received by the Banking Commissioner.]; Title 59 O.S. Supp.1998 § 2085 [Imposes licensure fees for mortgage brokers to be deposited in the Oklahoma Mortgage Brokers Recovery Fund.]; Title 59 O.S. Supp.1996 § 858–708 [Imposes fees under the Oklahoma Certified Real Estate Appraisers Act. Pursuant to § 858–701, the purpose of the act is to provide appraisers a process for certification.]; Title 59 O.S. Supp.1995 §§ 1308 and 1309 and 59 O.S. Supp.1998 § 1308.1 [All three statutes relate to fees imposed for examination and renewals of bailbondsmen licenses.]; Title 71 O.S. Supp.1999 § 412 [Creates the Oklahoma Department of Securities Revolving Fund consisting of fees and other charges collected by the Securities Administrator.]; Title 17 O.S.1998 Supp. § 180.11 [Authorizes the Corporation Commission to assess fees against public utilities sufficient to fund the operations of the Commission's Public Utility Division.].

4. Title 62 O.S.1991 § 253 provides:

"There is hereby created in the State Treasury a special fund to be designated the 'Special Cash Fund'. Said fund shall be subject to legislative appropriation or transfer as provided by law and shall consist of such monies as the Legislature may direct to be transferred to said fund."

5. The Okla. Const. art. 5, § 33 provides:

"A.  All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.
B.  No revenue bill shall be passed during the five last days of the session.
C.  Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the

be passed by a super-majority of each house of the Legislature or that they be submitted to a vote of the people. We hold that they do not.

## UNDISPUTED FACTS

¶ 3 At the close of the first regular session of the Forty–Seventh Legislature, House Bill 1574 and Senate Bill 165 were adopted. The Governor approved the bills on May 27, 1999. The bills contain multiple provisions requiring the appellee, Director of State Finance Tom Daxon [Director], to transfer monies from various funds to the Special Cash Fund of the State Treasury. House Bill 1574 and Senate Bill 165 do not levy taxes or increase monies paid into state coffers. Rather, they require a transfer of existing cash on hand from several fee-generated funds to the Special Cash Fund of the State Treasury.[6] Monies transferred pursuant to the two bills have been appropriated to various state boards and agencies to fund operations.[7]

¶ 4 On June 22, 1999, the appellants, eleven members of the Oklahoma House of Representatives [Representatives], filed a declaratory judgment action [8] challenging the constitutionality of the bills. The Representatives alleged that the bills were subject to the Okla. Const. art. 5, § 33 requiring that revenue bills be passed by a super-majority of each house of the Legislature or that they be submitted to a vote of the people. The Representatives also sought writs of mandamus and prohibition and injunctive relief to prevent the Director from executing the transfers.

¶ 5 After a hearing on June 25, 1999, the trial judge denied the request for writs of prohibition and mandamus and refused to issue a preliminary injunction. Subsequently, the Director executed the monetary transfers.[9] The Director and the appellee/intervenor, President *Pro Tempore* of the Oklahoma State Senate Stratton Taylor [President *Pro Tempore*], filed motions for summary judgment on July 12, 1999, asserting that neither bill was a "revenue bill" or a "bill for raising revenue" subject to the procedural require-

state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.
D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (¾) of the membership of the House of Representatives and three-fourths (¾) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor."

6. Affidavit of Tom Daxon, Finance Director for the State of Oklahoma, providing in pertinent part at pp. 1–2:

"... In my capacity as Finance Director, I am familiar with both of the legislative enactments challenged in this lawsuit, House Bill 1574 and Senate Bill 165, which direct me to transfer various funds to the Special Cash Fund in the State Treasury. **Neither bill raises or in any way increases the revenue of the State of Oklahoma.** Rather, both bills merely require that **I transfer existing cash on hand** to the Special Cash Fund of the State Treasury. No addition-

al revenue comes to the State by virtue of those bills...." [Emphasis in original.]

7. Senate Bill 146 makes appropriations to the Department of Human Services, the Department of Rehabilitation Services, the Office of Juvenile Affairs, and the State Department of Health. House Bill 1571 makes appropriations to the Department of Rehabilitation Services, the Office of Juvenile Affairs, the Oklahoma Education Television Authority, the Oklahoma State Regents for Higher Education, the State Board of Vocational and Technical Education, the Office of the Auditor and Inspector, the Department of Central Services, the Oklahoma Department of Commerce, the Office of the Lieutenant Governor, the Department of Human Services, the Oklahoma Commission on Children and Youth, the Department of Mental Health and Substance Abuse Services, the State Department of Agriculture, the Oklahoma Tourism and Recreation Department, the Oklahoma Historical Society, the Department of Public Safety, and the Supreme Court for operation of the District Courts.

8. Title 12 O.S.1991 § 1651.

9. Affidavit of Tom Daxon, Finance Director for the State of Oklahoma, providing in pertinent part at p. 2:

"... As required in House Bill 1574 and Senate Bill 165, I have transferred the designated funds to the Special Cash Fund...."

ments of art. 5, § 33. On October 22, 1999, the trial court sustained the motions. The Representatives appealed, and we retained the cause on January 12, 2000.

**¶ 6 LEGISLATIVE ACTS TRANSFER-RING MONIES FROM FEE–GEN-ERATED FUNDS TO THE SPECIAL CASH FUND ARE NOT "REVENUE BILLS" OR "BILLS FOR RAISING REVENUE" SUBJECT TO THE PROCEDURAL REQUIREMENTS OF THE OKLA. CONST. ART. 5, § 33.**

¶ 7 The Representatives assert that House Bill 1574 and Senate Bill 165 violate art. 5, § 33 of the Oklahoma Constitution by raising revenue without a vote of the people or a three-fourths majority of the House and the Senate. The Director and the President *Pro Tempore* insist that the definition of a "revenue bill" or a "bill for raising revenue" is well settled in Oklahoma law and that a mere transfer from fee-generated funds to the Special Cash Fund is not subject to the strictures of art. 5, § 33. We agree.

**A.**

**¶ 8 THE ADDITION OF PROCEDURAL REQUIREMENTS TO THE OKLA. CONST. ART. 5, § 33 DID NOT AL-TER THE SETTLED DEFINITION OF "REVENUE BILLS" OR "BILLS FOR RAISING REVENUE" WITHIN THE MEANING OF THE CONSTI-TUTIONAL PROVISION.**

¶ 9 The terms "revenue bill" and "bill for raising revenue" are used interchangeably in

art. 5, § 33.[10] The Court first considered the meaning of the terms in 1908, only thirteen months after the provision first became effective. In *Anderson v. Ritterbusch*, 1908 OK 250, ¶——, 22 Okla. 761, 98 P. 1002, the Court traced the origins of the Oklahoma provision to the British House of Commons. Considering the origin, the history, the treatment by federal and state courts, and the evils intended to be avoided by similar provisions, the *Anderson* Court held that: 1) revenue bills are those laws whose principal object is the raising of revenue and which levy taxes in the strict sense of the word; and 2) laws under which revenue may incidentally arise are not "revenue bills" or "bills for raising revenue" within the meaning of the Oklahoma Constitution.

¶ 10 The original version of art. 5, § 33 considered in *Anderson* provides:

All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills. No revenue bill shall be passed during the last five days of the session.

The provision was amended in 1931 with the only change being to reorder the last phrase of § 33 to read "the five last days" rather than "the last five days" of the legislative session. From 1908 to the present, in an unbroken line of cases, we have reinforced the definition first promulgated by the *Anderson* Court.[11]

¶ 11 Art. 5, § 33 was amended by an election held on March 10, 1992. Before

---

10.  *Anderson v. Ritterbusch,* see note 11, infra.

11.  *Fent v. Oklahoma Capitol Improvement Auth.,* see note at 17 ¶ 2, infra; *In re Initiative Petition No. 348,* 1991 OK 110, ¶ 3, 820 P.2d 772; *Board of County Comm'rs v. Oklahoma Public Employees Retirement Sys.,* 1965 OK 111, ¶¶ 22–23, 405 P.2d 68; *Leveridge v. Oklahoma Tax Comm'n,* 1956 OK 77, ¶ 0, 294 P.2d 809; *Pure Oil Co. v. Oklahoma Tax Comm'n,* 1936 OK 516, ¶——, 179 Okla. 479, 66 P.2d 1097; *Wallace v. Gassaway,* 1931 OK 210, ¶——, 148 Okla. 265, 298 P. 867; *Ex parte Sales,* 1924 OK ——, ¶——, 108 Okla. 29, 233 P. 186; *Lusk v. Ryan,* 1918 OK 94, ¶——, 69 Okla. 165, 171 P. 323; *In re Lee,* 1917 OK 458, ¶——, 64 Okla. 310, 168 P. 53; *Trustees', Executors' & Securities Ins. Corp., Ltd. v.*

*Hooton,* 1915 OK 1059, ¶——, 53 Okla. 530, 157 P. 293; *Cornelius v. State ex rel. Cruce,* 1914 OK 222, ¶——, 40 Okla. 733, 140 P. 1187; *Anderson v. Ritterbusch,* 1908 OK 250, ¶——, 22 Okla. 761, 98 P. 1002; *Walters v. State ex rel. Oklahoma Tax Comm'n,* 1996 OK CIV APP 154, ¶ ——, 935 P.2d 398, *cert. denied,* 522 U.S. 908, 118 S.Ct. 266, 139 L.Ed.2d 192 (1997), *reh'g denied,* 522 U.S. 1009, 118 S.Ct. 592, 139 L.Ed.2d 428 (1997); *Meek v. State,* 1933 OK CRIM ——, ¶——, 54 Okla.Crim. 415, 22 P.2d 933. See also, Annot. *"Application of Constitutional Requirement that Bills for Raising Revenue Originate in Lower House,"* 4 A.L.R.2d 973 (1949); Ramsey, "What is a 'Revenue Bill' within the Meaning of Our Most Recent Constitutional Amendment," 63 O.B.J. 1567 (1992).

being submitted to the people, the legal sufficiency of the initiative petition was challenged—*In re Initiative Petition No. 348, State Question No. 640*, 1991 OK 110, ¶ 2, 820 P.2d 772. We upheld the petition against arguments that it: 1) violated the one subject rule of the Okla. Const. art. 24, § 1;[12] 2) exceeded the initiative power of the people by destroying the state financing scheme; 3) violated 34 O.S. Supp.1992 §§ 3 and 9[13] in that neither the gist of the proposition nor the ballot title explained the effect of the amendment; and 4) violated the United States Const. art. IV, § 4[14] by destroying the Legislature's ability to make decisions in the area of taxation. The Representatives assert that in approving the measure, the Court made no mention of prior cases defining "revenue bills." The assertion is unconvincing because of the language of the opinion at ¶ 3:

> The Petition, if adopted, would require all revenue raising bills [3] be approved by a majority of the people at the next general election unless such revenue bill was approved by a three-fourths vote of both houses.

12. The Okla. Const. art. 24, § 1 provides in pertinent part:

"... No proposal for the amendment or alteration of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace one general subject, each proposed article shall be deemed a single proposal or proposition."

13. Title 34 O.S. Supp.1992 § 3 provides in pertinent part:

"... A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet...."
Title 34 O.S. Supp.1992 § 9 was amended in 1994. Although the language differs slightly, the same requirements are imposed under both statutes. Therefore, reference is made to the current version providing in pertinent part:
"... B....The suggested ballot title:
1. Shall not exceed two hundred (200) words;
2. Shall explain in basic words, which can be easily found in dictionaries of general usage, the effect of the proposition;
3. Shall be written on the eighth-grade reading comprehension level;

3. 'Revenue Bills' are those that levy taxes in the strict sense of the word and are not bills for other purposes which may incidentally create revenue. *Pure Oil Co. v. Oklahoma Tax Commission*, 179 Okla. 479, 482, 66 P.2d 1097, 1100 (1936).

¶ 12 Title 34 O.S. Supp.1994 § 9 requires that ballot titles not contain any words having a special meaning for a particular profession or trade not commonly known to Oklahoma citizens.[15] The Representatives allege that case law promulgated both before and after the amendment of art. 5, § 33 is irrelevant because the cases do not define "revenue" in the ordinary sense of the word as required by § 9. However, when the nature of the amendment approved by the voters is examined, the argument fails.

■ ¶ 13 Although an amendment to a constitutional provision that has been judicially interpreted is presumed to change existing law,[16] the amendment adopted by the electorate in 1992 did not alter the language which has been a part of the Constitution since its inception in 1907. Subsection A and B of § 33 contain language virtually identical to that first considered in *Anderson* and language mirroring the 1931 amendment. The amendatory language is found

4. Shall not contain any words which have a special meaning for a particular profession or trade not commonly known to the citizens of this state;
5. Shall not reflect partiality in its composition or contain any argument for or against the measure;
6. Shall contain language which clearly states that a 'yes' vote is a vote in favor of the proposition and a 'no' vote is a vote against the proposition; and
7. Shall not contain language whereby a 'yes' vote is, in fact, a vote against the proposition and a 'no' vote is, in fact, a vote in favor of the proposition...."

14. The United States Const. art. IV, § 4 provides in pertinent part:

"... The United States shall guarantee to every State in this Union a Republican Form of Government ..."

15. Title 34 O.S. Supp.1994 § 9(B), see note 13, supra.

16. *Williams Natural Gas Co. v. Perkins*, 1997 OK 72, ¶ 14, 952 P.2d 483. See also, *Texas County Irrigation & Water Resources Ass'n v. Oklahoma Water Resources Bd.*, 1990 OK 121, ¶ 6, 803 P.2d 1119.

not in the portion of the constitutional provision relating to revenue bills but is confined to subsections C and D. These added provisions impose procedural requirements that: 1) revenue bills garner a 75% super-majority vote in both the State House and Senate or that they be submitted to a vote of the people;[17] and 2) if approved by the Legislature, revenue bills are not subject to an emergency measure provision and do not go into effect until 90 days after legislative approval and gubernatorial action.[18]

■ ¶ 14   Constitutional provisions are applied giving effect to the intent of the people voting on them.[19] Amendments are construed to effectuate their purpose.[20] The Legislature and the voters expect the courts to be familiar with settled rules of constitutional construction and to follow them.[21] The 1992 amendment of art. 5, § 33 merely changed the method state government may use to raise revenue.[22] It did not change the clearly settled meaning of the terms, "revenue bill" or "bill for raising revenue." Rather, the voters merely added new requirements before such bills may become law. We determine, consistent with cases spanning in excess of the last ninety years, that: 1) revenue bills are those laws whose principal object is the raising of revenue and which levy taxes in the strict sense of the word; and 2) laws under which revenue may incidentally arise are not "revenue bills" or "bills for raising revenue" within the meaning of art. 5, § 33.

**B.**

¶ 15   **UNDER OKLAHOMA JURISPRUDENCE, LAWS IMPOSING A TAX OR A LICENSE FEE INCIDENTAL TO LEGISLATION DO NOT RAISE REVENUE WITHIN THE MEANING OF THE OKLA. CONST. ART. 5, § 33.**

■ ¶ 16   Initially, the Representatives contend that all legislation imposing a fee or a tax must conform to the procedural requirements of art. 5, § 33.[23] Alternatively, they argue that if the fees originally raised were not subject to the restrictions of art. 5, § 33 that—after the transfers effectuated by House Bill 1574 and Senate Bill 165—, the character of the fees and the purpose for which they were imposed changed. The Representatives assert that because the transferring bills contain no language relating to the fees' original purposes, their nature was altered and that the fees are now nothing more than general revenue of the state. Under the Representatives' analysis, fees originally constitutional became unconstitutional when transferred to the Special Cash Fund.

¶ 17   The Director counters that because the bills neither increase the size of state coffers nor impose a tax in the strict sense of the word, they are not subject to the procedural requirements of art. 5, § 33. The President *Pro Tempore* agrees asserting that

17. The Okla. Const. art. 5, § 33, see note 5; *Fent v. Oklahoma Capitol Improvement Auth.*, 1999 OK 64, ¶ 1, 984 P.2d 200, *cert. denied*, —— U.S. ——, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999).

18. The Okla. Const. art. 5, § 33, see note 5, supra; *In re Initiative Petition No. 348*, see note 11, supra.

19. *Independent School No. 19 for Fiscal Year 1997-98*, 1998 OK 43, ¶ 7, 959 P.2d 580; *Hendrick v. Walters*, 1993 OK 162, ¶ 7, 865 P.2d 1232.

20. *Smith ex rel. State v. State Bd. of Equalization*, 1981 OK 57, ¶ 9, 630 P.2d 1264; *Austin, Nichols & Co., Inc. v. Oklahoma County Bd. of Tax-Roll Corrections*, 1978 OK 65, ¶ 6, 578 P.2d 1200.

21. *Wimberly v. Deacon*, 1943 OK 432, ¶ ——, 144 P.2d 447.

22. *In re Initiative Petition No. 348, State Question No. 640*, see note 11, supra. The ballot title in the cause provides in pertinent part:

"This measure amends the State Constitution. It adds new provisions to Section 33 of Article 5. These would change the method by which state government makes laws that raise revenue...."

23. Plaintiff's Response Brief to Defendant's and Intervenor's Motions for Summary Judgment providing in pertinent part at p. 8 of 17:

"... [N]o fee or tax may be raised without a vote of the people. Thus the statutes underlying the tire fee and other fees which support the funds from which monies are transferred by HB 1574 and SB 165, are unconstitutional...."

enactments imposing fees or taxes incidental to a regulatory scheme are not revenue bills.

¶ 18 The Representatives' assertion that all fee-generating legislation is subject to the procedural requirements of art. 5, § 33 is unconvincing. It is well settled in our jurisprudence that laws imposing a tax or a license fee incidental thereto are not revenue raising laws under art. 5, § 33.[24] The Representatives contend that the fees composing the fee-generated funds, once transferred, may no longer be considered "incidental" to the regulatory scheme for which they were imposed. Nevertheless, they present no clear argument that the fees were not imposed in furtherance of the laws for which they were assessed. Rather, they insist that the transfer resulted in a change in the nature of the fees from being incidental to the legislation for which they were imposed to being general revenue for the state.[25] We are unpersuaded by the argument. Incidental fees and taxes, not constituting revenue raising measures, do not become subject to the procedural requirements of art. 5, § 33 via the mere transfer from one fund to another.

## C.

¶ 18 **THE LEGISLATURE HAS EXPRESS AUTHORITY PURSUANT TO THE OKLA. CONST. ART. 10, § 23 TO TRANSFER MONIES AMONG FUNDS.**

¶ 20 The Representatives do not address the Legislature's constitutional authority to transfer existing revenues or unappropriated cash on hand from one state fund to another. The President *Pro Tempore* alleges that the Legislature was authorized to make the transfers encompassed in House Bill 1574 and Senate Bill 165 under art. 10, § 23 of the Oklahoma Constitution.[26]

¶ 21 Except where it encounters a specific constitutional prohibition, the Legislature has the right and the responsibility to declare the fiscal policy of Oklahoma. This Court has no authority to consider the desirability, wisdom, or practicability of fiscal legislation.[27] It is not our prerogative to question the sagacity of the expressed policy. Whether an act is wise or unwise, whether it is based on sound economic theory or whether it is the best means to achieve the desired result are matters for legislative determina-

---

24. *Leveridge v. Oklahoma Tax Comm'n*, see note 11, supra [Bill declaring motor vehicle excise tax is not a revenue bill.]; *Pure Oil Co. v. Oklahoma Tax Comm'n*, see note 11, supra [Payment of tax or fee for use of public highways was not revenue raising measure]; *Wallace v. Gassaway*, see note 11, supra [Act providing for resale by county treasurer of realty for delinquent taxes not a revenue bill.]; *Ex parte Sales*, see note 11, supra [License fee for operation of transportation lines not a revenue law.]; *Ex parte Tindall*, 1924 OK ——, ¶ ——, 229 P. 125 [Fees for use of public highways by transportation companies not revenue bills.]; *Lusk v. Ryan*, see note 11, supra [Procedure for recovery of illegal taxes paid not a revenue bill.]; *In re Lee*, see note 11, supra [Docket fee collectable as a cost was not a revenue raising bill.]; *Trustees', Executors' & Securities Ins. Corp., Ltd. v. Hooton*, see note 11, supra [Registration tax on privilege of recording instruments not a revenue bill.]; *Cornelius, Register of Deeds v. State ex rel. Cruce*, see note 11, supra [Tax on mortgages is not a revenue measure.]; *Walters v. State ex rel. Oklahoma Tax Comm'n*, see note 11, supra [Bill changing method of calculating state income tax not a revenue bill.]. See also, *Meek v. State*, note 11, supra [Securities fee not a revenue raising measure but a proper exercise of the police power.]

25. The Representatives' response brief to the Director's and the President *Pro Tempore's* Motions for Summary Judgment provides in pertinent part at p. 14:
   "... The purpose of the tire fee and other fees, after the transfers effectuated by HB 1574 and SB 165, is nothing other than to raise revenue for the general purposes of government. The purposed [sic] to which the tire fee funds have been transferred contain no reference to any broader regulatory scheme for which the revenue in question is to pay. Instead, the revenue is transferred into the Special Cash Fund of the State Treasury, a fund from which over 80 different line item appropriations were made by the Legislature in FY 2000...." [Footnote listing the various funds omitted.]

26. The Okla. Const. art. 10, § 23(2) provides in pertinent part:
   "... [T]he Legislature may ... enact laws ... transferring the existing revenues or unappropriated cash on hand from one fund to another ...".

27. *Matter of Application of Oklahoma Capitol Improvement Auth.*, 1998 OK 25, ¶ 9, 958 P.2d 759; *In re Initiative Petition No. 347*, 1991 OK 55, 813 P.2d 1019; *State ex rel. York v. Turpen*, 1984 OK 26, ¶ 12, 681 P.2d 763.

tion. This Court, may not, based on its perception of how the State should conduct its business dealings, direct legislative decision making.[28]

¶ 22 Art. 10, § 23—known as the balanced budget amendment—provides that "the Legislature may ... enact laws ... transferring the existing revenues or unappropriated cash on hand from one fund to another ...". In *City of Sand Springs v. Department of Public Welfare*, 1980 OK 36, ¶ 18, 608 P.2d 1139, we determined that the language of art. 10, § 23 gave the Legislature express authority to enact laws transferring existing revenues or surpluses among funds[29]—the precise situation presented here.

¶ 23 It is uncontested that monies moved from the fee-generated funds had been collected before the transfers were accomplished—the transfer did not generate the funds or increase the value of existing monies. Cash on hand was moved from various funds to a central location, the Special Cash Fund, so that it could be appropriated by the Legislature. The Legislature utilized House Bill 1574 and Senate Bill 165 as cash flow management devices—an action specifically authorized by the clear language of the Okla. Const. art. 10, § 23. We hold that the transfers are constitutional.

## CONCLUSION

¶ 24 If there are two possible interpretations—one of which would hold the legislation unconstitutional, the construction must be applied which renders them constitutional.[30] Unless a law is shown to be fraught with constitutional infirmities beyond a reasonable doubt,[31] this Court is "bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision."[32] The Respondents have failed to carry the burden necessary to invalidate House Bill 1574 and Senate Bill 1265.

¶ 25 We hold that legislative acts transferring monies from fee-generated funds to the special cash fund are not "revenue bills" or "bills for raising revenue" subject to the procedural requirements of the Okla. Const. art. 5, § 33. Our holding is based on determinations that: 1) the addition of procedural requirements to the constitutional provision did not alter the settled definition of revenue laws within the meaning of the Oklahoma Constitution; 2) our jurisprudence holding that laws imposing a tax or a license fee incidental to legislation do not raise revenue within the meaning of art. 5, § 33; and 3) the Legislature's express authority under art. 10, § 23 to transfer monies among funds.

## AFFIRMED.

All Justices concur.

28. *Matter of Application of Oklahoma Capitol Improvement Auth.*, see note 27, supra; *In re Initiative Petition No. 347*, see note 27, supra; *Palmer Oil Corp. v. Phillips Petroleum Co.*, 1950 OK 78, 231 P.2d 997, *appeal dismissed*, 343 U.S. 390, 72 S.Ct. 842, 96 L.Ed. 1022.

29. Earlier, in *Draper v. State Bd. of Equalization*, 1966 OK 87, ¶¶ 5, 12, 414 P.2d 276, we held that art. 10, § 23 superseded a 1944 constitutional amendment dealing with the transfer of funds from the general revenue fund to a sinking fund to retire state bonds. Without discussing art. 10, § 23 we determined that a statute transferring monies from the teachers' retirement system to the education employees' group insurance reserve fund was constitutional in *Taylor v. State &*

*Educ. Employees Group Ins. Program*, 1995 OK 51, ¶ 20, 897 P.2d 275.

30. *Matter of Application of Oklahoma Capitol Improvement Auth.*, see note 27, supra; *Gilbert Central Corp. v. State*, 1986 OK 6, ¶ 7, 716 P.2d 654, 658.

31. *Matter of Application of Oklahoma Capitol Improvement Auth.*, see note 27, supra; *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶ 18, 833 P.2d 1218, 1229.

32. *Matter of Application of Oklahoma Capitol Improvement Auth.*, see note 27, supra; *Gilbert Central Corp. v. State*, see note 30 at 658, supra.