SANDERS v. OKLAHOMA TAX COMMISSION.

No. 32010. May 21, 1946.

Rehearing Denied June 18, 1946.

*169 P. 2d 748.*

Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, for plaintiff in error.

E. L. Mitchell and W. F. Speakman, both of Oklahoma City, for defendant in error.

HURST, V.C.J. This is an action to recover motor fuel taxes paid under protest. The trial court entered judgment for defendant, and plaintiff appeals.

The case was tried upon the written and oral stipulation of counsel from which the following facts appear: Leo Sanders, a contractor, entered into two lump sum (as distinguished from cost-plus) contracts with the United States to perform certain construction work on two federal areas known as the Wolf Creek Flood Dam in Woodward county and the Oklahoma Aircraft Assembly Plant in Oklahoma county. He obtained a motor fuel dealer's license under the name of "Leo Sanders, sole trader, doing business as Leo Sanders Fuel Company", in which capacity he appears as plaintiff in this case. Between January, 1941, and August, 1943, as such dealer, he purchased large quantities of gasoline from a refinery at Cushing, Okla. The gasoline was transported by a common carrier to the federal areas where it was received and stored by plaintiff. Thereafter, a bookkeeping sale was effected by Sanders in his capacity as dealer to himself in his capacity as contractor. The gasoline was then withdrawn from storage and used in the tractors and other machinery employed by Sanders, as a contractor, in performing the construction work under his contracts with the government. None of the gasoline was used to propel motor vehicles on the highways. The question for decision is whether, under such circumstances, the defendant properly required plaintiff to pay taxes upon the sale, storage, withdrawal from storage or use of such gasoline.

1. Plaintiff first contends that since this fuel was not used in vehicles operating upon the highways it was impliedly exempted from taxation by the Legislature. We think there is no merit in this contention. The taxes involved in this case were levied under 68 O.S. 1941

§§ 659(a), 660, and 52 O.S. 1941 § 331. Sections 659(a) and 660 levy an "excise tax upon the sale of each and every gallon of gasoline sold, or stored and distributed, or withdrawn from storage, within the state for sale or other use", except gasoline used for certain designated purposes such as cleaning, farming, aircraft purposes and in school busses and by the State Board of Public Welfare. The use to which the gas in question was devoted is not among the enumerated exemptions. Section 331, above, which levies an exise tax of 8/100 of one cent on each gallon of gasoline, etc., is not so explicit but makes no exemptions. But, it is clear that none of these statutes levy a tax upon the use of the public highways to be measured by the gasoline consumed. It is true that the Legislature has provided that nearly all of the revenue derived from gasoline taxes shall be used for highway purposes. But this is the privilege of the Legislature, and if it desired it could amend the law so that the tax could be devoted to other public uses. Section 12 of article 10 of the Oklahoma Constitution constitutes a grant of power to the Legislature to levy excise and other taxes and does not limit the purpose for which they may be levied or used. The view we take on this point is in accord with the decisions from other states. See George E. Breece Lumber Co. v. Gilberto Mirabal, 34 N. M. 643, 287 P. 699, 84 A.L.R. 827; Sparling v. Refunding Board, 189 Ark. 189, 71 S. W. 2d 182.

2. Plaintiff next urges that since the storage of the gasoline and its subsequent withdrawal for use occurred within the bounds of a federal area no tax was due thereon. A proper understanding of this contention requires some discussion of the nature of federal areas or "enclaves", as they are sometimes called, and the state and federal statutes applicable thereto. By 80 O.S. 1941 § 1, the consent of the state is given to the acquisition of lands by the federal government for certain purposes, including those for which the areas involved here were acquired. 80 O.S. 1941 § 2 provides: "Exclusive jurisdiction in

and over any lands so acquired by the United States shall be, and the same is hereby ceded to the United States for all purposes" (except the service of civil and criminal process) so long as the United States "shall own such lands." The United States, however, has surrendered to the state the right to exercise the limited jurisdiction of taxing gasoline and motor fuels within these areas. Section 10 of the Hayden-Cartwright Act of June 16, 1936, 49 Stat. 1521, authorized the states to levy taxes upon "sales of gasoline and other motor vehicle fuels" when sold in federal areas.

On October 9, 1940, Congress enacted the Buck Act, 54 Stat. 1059, 4 U. S. C. A. §§ 12-18. Section 1 of that act provides:

"(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part, within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

And by section 7 of the Buck Act, 4 U. S. C. A. § 12, the Hayden-Cartwright Act was amended to read as follows:

"All taxes levied by any State, Territory or the District of Columbia upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States military or other reservations, when such fuels are not for the exclusive use of the United States."

It is plaintiff's position that the United States, by the Buck Act, has not given the state the right to tax the with-

drawal from storage or use of gasoline occurring within the federal area unless accompanied by a sale therein. He says that the sale by himself to himself within the area should be disregarded and the transaction treated as one where a dealer purchased gasoline, transported it into the area, stored it, withdrew it from storage, and used it. He argues that the original sale at the refinery is not taxable because (treating the area as a foreign jurisdiction) the gasoline was going directly into interstate commerce, and that the withdrawal and use of the gasoline in the area was not taxable because there was no sale therein.

We are of the opinion that plaintiff's interpretation of the statutes is erroneous and that his contentions must fail. We think the purpose of the amendment of 1940 was to permit the various states to tax the use or sale of gasoline occurring within federal areas in exactly the same manner as though such areas did not exist, except in cases where the gasoline was to be used exclusively by the United States. It is true that in amending the statute Congress did not change the qualifying phrase "when sold by or through" post exchanges, etc., and under a literal construction the act might be interpreted to mean that the state could tax the use of gasoline only if sold in the area. Such an interpretation, however, leads to an absurd result. In State of Minnesota v. Keeley, 126 Fed. 2d 863, the Circuit Court of Appeals for the Eighth Circuit stated that the purpose of the act, even before the amendment, was to permit the states to obtain more revenue for highway improvement and thus extend the program initiated by the Federal Aid Highway Act of 1916, 39 Stat. 355, which was financed by matching state and federal funds. If such be the case, why should Congress have intended to restrict the right of the state to tax gasoline withdrawn from storage and used in the area to that previously sold within the area? Such a result would be contrary to the purpose of the act, because it would decrease the revenue of the state for highway improvement. Federal statutes must be interpreted to effect the will of Congress. U. S. v. N. E. Rosenblum Truck Lines, 315 U. S. 50, 86 L. Ed. 671, 62 S. Ct. 445; State of Minn. v. Keeley, above; 50 Am. Jur. 199-200.

A further light upon the intent of Congress in enacting the amendment of October 9, 1940, is shed by the Senate Report thereon, quoted in Minnesota v. Keeley, above, which stated:

"Section 7(a) of the committee amendment amends section 10 of the Hayden-Cartwright Act so that the authority granted to the States by such section 10 will more nearly conform to the authority granted to them under section 1 of this Act. At the present time a State such as Illinois, which has a so-called gallonage tax on gasoline based upon the privilege of using the highways in that State, is prevented from levying such tax under the Hayden-Cartwright Act because it is not a tax upon the 'sale' of gasoline. The amendments recommended by your committee will correct this obvious inequity and will permit the levying of any such tax which is levied 'upon, with respect to, or measured by, sales, purchases, storage, or use of gasoline or other motor vehicle fuels' ".

Plaintiff relies upon State of Wyoming v. Yellowstone Park Co., 57 Wyo. 502, 121 P. 2d 170. But that decision was based upon the statute as it existed prior to the amendment.

We conclude, therefore, that Congress has granted the state the right to tax the sale, use, or withdrawal from storage of gasoline occurring within a federal area to the same extent as though the area were not a federal area. It is conceded that a dealer who purchases gasoline without paying any tax thereon and thereafter, within the state, devotes it to his own use, becomes liable for the tax.

It follows that plaintiff, having used the gasoline in an area which in legal contemplation was no different from any other part of the state, became liable for the tax upon its use, and the trial court correctly so held.

We do not mean to intimate that if Congress had not permitted the taxation of the sale or use of the gasoline within the area, shipment into such area would constitute "interstate commerce". A decision of such question is unnecessary in view of our interpretation of the Hayden-Cartwright Act as amended by the Buck Act.

3. Plaintiff finally urges that the excise tax was not payable by reason of 68 O. S. 1941 § 659 e(b), which provides that gasoline "withdrawn from storage, and sold for exportation and exported, by a licensed distributor or a licensed transporter for hire shall not be subject to the gasoline excise tax hereby levied." It is plaintiff's theory that taking the gasoline into the confines of the federal area and using it therein constitutes an *exportation* of the gasoline. But under our interpretation of the Hayden-Cartwright Act, as amended by the Buck Act, Congress intended to grant the state power to tax gasoline used or sold therein exactly to the same extent as though such federal area were not a federal area. Hence the federal area was not a foreign jurisdiction so far as the levy of the gasoline tax was concerned, and shipment of gasoline into such area could not be said to be an exportation thereof.

Judgment affirmed.

RILEY, WELCH, CORN, and DAVISON, JJ., concur.