RED SLIPPER CLUB, INC., a corporation, and Laura M. Riggins, d/b/a Red Slipper Club, et al., Appellees,

v.

The CITY OF OKLAHOMA CITY, a Municipal Corporation, Appellant.

No. 50010.

Supreme Court of Oklahoma.

July 24, 1979.

Rehearing Denied Sept. 17, 1979.

Andrew Hamilton, Arthur S. Bay, Jack D. Fisher, Bay, Hamilton, Renegar & Lees, Oklahoma City, for appellees.

Walter M. Powell and Diane L. Davis, Oklahoma City, for appellant.

HARGRAVE, Justice:

The Red Slipper Club is the named appellee representing the holders of a Class C license to operate a private club in the City of Oklahoma City. The appellee originally instituted the action culminating in this appeal to obtain a temporary and permanent injunction enjoining the appellant, City of Oklahoma City, from enforcing city ordinance number 14,172 which increased the annual license fee for private clubs of the class from $600.00 to $1200.00. The suit also sought a declaratory judgment that this private club license fee was arbitrary, prohibitory in amount, and therefore constitutionally unauthorized, and thus, invalid. The trial court denied the temporary injunction, finding no danger of irreparable harm if the injunction did not issue, but did order the $600.00 increased licensing fee to

be held in escrow during the pendency of the action. After the hearing on the merits, the court entered an order holding the regulation of private clubs within the city to be within the scope of the city's police power, but held the 1975 amendment raising the license fee to $1200.00 unconstitutional as not based upon the cost of the regulation of that activity. In response to the other issue raised by the appellee, the trial judge found the 1960 ordinance to be within the cost of administration of the licensing activity so near as to be a fairly debatable issue and therefore valid. The City of Oklahoma City appeals this ruling alleging the trial judge erred in holding the appellee overcame the presumption of validity attaching to the municipal ordinance[1] establishing the $1200.00 fee.

■ As the issues are narrowed by the parties in the briefing cycle, the determination of this appeal revolves around the question of whether a proper item of cost in the licensing of private clubs is the cost of the City's police patrol division's supervision of these Class C private clubs. Implicit in this statement of the issue on appeal is the assumption that the issuance of a license for a Class C private club (which is a license to operate an establishment within the City wherein intoxicating beverages are consumed) is governed by the general rule that the municipality may not impose a license fee in the exercise of its police power that results in income exceeding the cost of issuing the license and regulating the business as this rule is expressed in *Mitchell v. City of Lawton, 124 Okl. 60, 253 P. 999 (1926)* and *City of Shawnee v. Reid Brothers Plumbing Co., 201 Okl. 592, 207 P.2d 779 (1949).* This Court disapproves of the application of an exception to the last mentioned rule sometimes applied in instances where the license is sought for the purpose of operating an establishment wherein spirituous beverages are consumed[2], and therefore the rule expressed in the last mentioned cases is applicable to the municipal ordinance in question.

■ The distinction between the municipality's power to impose police regulations and their power to tax are separate and distinct, and must be examined as distinct concepts. *Apache Gas Products v. Oklahoma Tax Commission, 509 P.2d 109 (Okl. 1973).*

■ The *ratio legis* of a police regulation is the protection of the public and not raising revenue. *Mitchell v. City of Lawton, supra; Ex Parte Holt, 74 Okl. 226, 178 P. 260 (1919).* Notwithstanding language to the contrary in *In Re Skelton Lead & Zinc Company's Gross Production Tax for 1919, 81 Okl. 134, 197 P. 495, 498 (1921),* an occupation tax is not equatable with a license tax. The character of a payment to the municipality as a tax or license fee is not changed or determined by the name given it by the legislation involved, but is determined according to the mission given it by the law under which it is levied. *In Re Skelton Lead & Zinc Company's Gross Production Tax for 1919, supra.* See also, *City of Hartshorne v. Marathon Oil Co. (Amoco Production Co.), 593 P.2d 97 (Okl. 1979).*

■ Where an ordinance is merely a regulatory enactment under the police power serving the purpose of protection of the public, the license fees charged should not exceed the expense of issuing the license[3] and regulating the business. *City of Tulsa v. Metropolitan Jewelry Co., 74 Okl. 107, 176 P. 956 (1919).* The determination that an ordinance partakes of the nature of a regulation pursuant to the police power as a revenue raising tax provision should be made, if at all possible, by examining the language of the legislation itself. Generally, if the questioned provision tends toward the prevention of an offense against, or

---

1. *Ex Parte Davis, 82 Okl.Cr. 444, 172 P.2d 340 (1946),* McQuillian, *Municipal Corporations,* § 22.30 (1969).

2. See Annotation: Liquor License—Cost of Regulation, 103 A.L.R. 327 (1936).

3. That is not to say that revenue may not be gained incidentally by virtue of a license fee. See, *Ex Parte Davis, supra.*

aims at the protection of, the public health, morals, safety, or welfare, then that legislation is referable to the police power as the enacting body. This Court has on occasion refused to characterize a fee denominated a license fee as such where the ordinance under consideration contained no provision which tended to show that its purpose was the regulation of the business affected. *Mitchell v. City of Lawton, supra; City of Tulsa v. Metropolitan Jewelry Co., supra.*

■ The fee charged private clubs per year of operation by ordinance number 14,-172, enacted as Ch. 20, Sect. 17 of the 1970 Oklahoma City Code appears on its face to be a simple tax, appending no conditions on the privilege to engage in the occupation. Inasmuch as the license fee is levied under the authority of Chapter 5, Sect. 53, wherein are found voluminous restrictions and regulations on the privilege of operating a private club in the City of Oklahoma City, the record demonstrates the fee charged is a regulatory enactment under the police power. License fees will be upheld although the fee charged is in excess of the cost of issuance and supervision of that concern if the revenue derived therefrom is not disproportionate to the cost of issuance. The reasonable amount of the fee depends upon the sound discretion of the legislative body imposing it, and the fee will be presumed reasonable unless the contrary appears upon the face of the ordinance, by law, or established by proper evidence; but if the fee is wholly out of proportion to the expenses involved, it will be declared a tax. *City of Shawnee v. Reid Brothers Plumbing Co., 201 Okl. 592, 207 P.2d 779 (1949).* Inasmuch as this Court is reviewing the validity of a legislative enactment of the governing body of the municipality, the ordinance will be upheld unless the amount required for the license is clearly arbitrary and unreasonable and as long as it appears there is room for fair debate on that issue, this Court shall not substitute its judgment for that of the municipal legislative body charged with the duty to enact such ordinances. *Gant v. City of Oklahoma City, 289 U.S. 98, 53 S.Ct. 530, 77 L.Ed. 1058 (1933).*

■ Turning to the evidence of income and cost of licensing private clubs in the city of Oklahoma City as reflected by the record, we find that under a $1200.00 per-club license fee the income derived from 250 private clubs is over $300,000.00. Cost of the licensing program to the city is $313,-213.05 and of that amount, $239,633.45 is the cost to the city per year for 113 patrolmen's *estimated* time of one hour per shift per day, three hundred sixty-five days a year. Not included in that sum is thirty seven-plus thousand dollars expended by clerical personnel and detectives. The trial court held the expenses of the patrol division not admissible as a proper expense to be borne by the licensing fee, stating from the bench at the time of issuing his ruling:

"... So we have here ... the question of whether what would be routine police work conducted by the patrol division, and whether or not that part of the expenses attributed to the enforcement of the ordinance is in fact a reasonable and necessary part of the total expenditure by the city and enforceable by the licensing of the ordinance. The Court finds that the expenses attributed the patrol division from the evidence presented at trial are not necessary and incidental expenses to the licensing and policing of the ordinance, and the fee of $1200.00 is therefore a revenue measure."

The appellant contends this Court is bound by stare decisis to allow the offered evidence of police patrol costs into evidence as competent evidence of costs of administering and enforcing the licensing and regulation scheme by virtue of the following excerpt from *Jack's Supper Club v. City of Norman, 361 P.2d 291, 295 (Okl.1961):*

"The City of Norman called as a witness its chief of police ... his testimony amply sustains the contention of defendant that the distinctions complained of are justified because the cost of maintaining law and order in each class of clubs is certain to vary in respect to different classes of clubs. We believe that the defendant was justified in making the classifications made and that they are reasonable and not arbitrary."

The cited language is not broad enough to amount to a holding that all incidental law enforcement costs which can in any way be connected with a private club (or the proximity of a private club) are attributable to the cost of licensing that club. The statement properly refers only to a justification for a higher license fee in one of three classes of licenses available in the City of Norman. The phrase "law and order" in its proper context as an includable expense refers to the expenses of enforcing the police regulations attendant upon the retention of the license. The higher cost of "keeping law and order" referred to in the Jack's Supper Club case is the necessity of expending law enforcement time in checking establishments for liquor law violations in the subject class of establishment, than in the other two, and does not encompass the cost of general criminal law enforcement.

The evidence offered and refused by the trial court on the issue of law enforcement expenses is additionally lacking in probative value as setting a value on the police patrol work directly related to the activities of the regulated class or establishment. A police lieutenant testified the figures offered and rejected included that portion of the patrol division's criminal law enforcement devoted to locations other than that of private clubs. Accountable time was spent in checking activities on property adjoining private clubs and even localities far removed from a club where, to paraphrase the witness, it could be determined that the call originated from an activity "connected with" a private club. Even the witness conceded the activity held accountable was general:

"This [$239,000.00 spent by the patrol division] involves such routine matters as answering calls for service to a private club, answering calls for service to the parking lots of the private clubs, calls for service to an area immediate [sic] adjacent to a private club. It would also involve incidences [sic] handling inebriates, in which it could be determined that the intoxication took place at the private club. It would involve taking reports on personal injury and fights where the reports were taken at a different location, but the report determines that the fight or injury, or in some cases the loss of property, took place in connection with the private club. It's pretty general activity. The only common denominator being that the primary activity involved a private club."

This testimony is sufficient grounds to deny consideration thereof in the trial court. The issue upon which the cost of administering the licensing program revolves is: What costs are incurred by the city in the issuance, investigation and enforcement of private club regulations? The evidence offered and excluded is, in the main, so far removed from that issue as to be irrelevant to the issue of cost of licensing the club.

█ The appellant also objects to the trial court's refusal to allow testimony that the $1200.00 fee is reasonable by utilizing certain federal government publications dealing with inflation. Those figures were offered to show that, given a $600.00 private club fee in 1960, a $1200.00 fee is justified in 1975. The trial court's refusal to admit the offered evidence is correct— the expert's report on its face discloses the report is based upon facts not in evidence as follows:

"2. Assuming that the 1960 price of a license was a reasonable price and a true reflection of the average total cost of providing regulation of private clubs, . . . ."

We have no indication in this record which substantiates that assumption. While the trial court did in fact hold the prior ordinance required a fee commensurate with the cost of licensing the regulated business, that ruling is specifically denominated to be a reasonable fee at the present time and not in 1960:

"The Court, however, further finds that the ordinance which provides for a $600.00 fee would raise a fairly debatable question, and that the evidence here would be insufficient for the court to make a determination that the council

acted arbitrarily or capriciously or in any way used the $600.00 fee as a revenue measure . . . I am not talking back to 1960 because we have no evidence as to what is was then, . . ."

■ Without a foundation laid to demonstrate the fee was reasonable in 1960, evidence tending to show inflationary pressures have doubled the cost of municipal government functions since that time is objectionable. We affirm, in light of the fact that the admission or rejection of evidence is largely a matter left to the trial court's discretion in an equitable proceeding where the trial court sits without a jury and absent an abuse of that discretion, the trial court's ruling will not be disturbed. *Kendall v. Sharp, 426 P.2d 707 (Okl.1967); Rivers v. Parker, 382 P.2d 16 (Okl.1963); LaDoux v. Bohn, 420 P.2d 501 (Okl.1966).*

The Red Slipper Club filed a petition in error cross appealing the trial court's refusal to hold the 1961 ordinance levying the $600.00 fee also unconstitutional. The sole mention of this issue in appellee's answer brief is found in the closing prayer. That issue has been waived for failure to brief and cite authority and the judgment of the trial court is in all respects Affirmed.

LAVENDER, C. J., IRWIN, V. C. J., and HODGES, SIMMS and DOOLIN, JJ., concur.

WILLIAMS and OPALA, JJ., dissenting.

WILLIAMS, Justice, dissenting:

To my mind the judgment affirmed by the opinion of the majority without propriety crossed the line laid down in the United States and Oklahoma Constitutions as separating the powers of the legislative and judicial branches.

I respectfully dissent.