### 2017 OK 83

**SIERRA CLUB, a California not-for-profit corporation, Oklahoma Chapter, Petitioner,**

v.

**STATE of Oklahoma EX REL. OKLAHOMA TAX COMMISSION, the Honorable Mary Fallin, Governor, in her official capacity, The Honorable Senator Mike Schultz, Senate President pro tempore, in his official capacity, The Honorable Representative Charles Mccall, Speaker of the House of Representatives, in his official capacity, Respondents.**

**Case Number: 116269**

Supreme Court of Oklahoma.

Decided: 10/24/2017

692

James A. Roth, Catherine L. Campbell, and Heather L. Hintz, Phillips Murrah P.C., Oklahoma City, Oklahoma, for Petitioner.

Mithun Mansinghani, Solicitor General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for Respondents.

WATT, J.:

¶1 The question presented is whether H.B. 1449 [1] is a *revenue bill* and thus in violation of Article V, Section 33 of the Oklahoma Constitution. We answer in the affirmative.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 H.B. 1449 creates the *Motor Fuels Tax Fee* for electric-drive and hybrid-drive vehicles, of $100 and $30 per year respectively, and directs that the money from the fees be deposited to the State Highway Construction and Maintenance Fund. The House passed H.B. 1449 on May 22, 2017 and the Senate passed it on May 25, 2017. H.B. 1449 passed with more than 51%, but less than 75%, of the vote in both chambers. It takes effect November 1, 2017.

¶3 On August 7, 2017, Petitioner filed an application to assume original jurisdiction, in this Court, to challenge H.B. 1449 as an unconstitutional *revenue bill* under Article V, Section 33 of the Oklahoma Constitution and to request a writ of prohibition or mandamus. Respondents argue that H.B. 1449 is not a *revenue bill*, therefore it does not violate Article V, Section 33.

## II. ASSUMPTION OF JURISDICTION

¶4 This Court has discretion to assume original jurisdiction in a controversy where both this Court and the district courts have concurrent jurisdiction. *Edmondson v. Pearce*, 2004 OK 23, ¶10, 91 P.3d 605, 613. This Court will usually only assume original jurisdiction over a controversy when the matter concerns the public interest *and* there is some urgency or pressing need for an early decision. *Id.* ¶11, 91 P.3d at 613. As H.B. 1449 involves a question of constitutionality and will have a statewide effect, there is little question it meets the first criteria. Further, H.B. 1449 has an imminent effect, as it will go into effect in less than two weeks, and ergo meets the second criteria. Accordingly, we now assume original jurisdiction.

¶5 Petitioner requests that this Court grant a writ of prohibition or a writ of mandamus; however, neither are the appropriate remedy here. Nonetheless, this Court looks to substance, not form, when a party to an original action requests an improper writ. *Stewart v. Judge of 15th Judicial District*, 1975 OK 156, ¶7, 542 P.2d 945. Therefore, Petitioner's petition for writ of prohibition or mandamus is transformed into a request for declaratory relief concerning the constitutionality of H.B. 1449. *Campbell v. White*, 1993 OK 89, ¶6 n.5, 856 P.2d 255, n.5.

## III. STANDARDS OF REVIEW

¶6 In considering a statute's constitutionality, a heavy burden is cast on those challenging the legislative enactment to show its unconstitutionality. *Fent v. Okla. Capitol Improvement Auth.*, 1999 OK 64, ¶3, 984 P.2d 200, 204. Every presumption is to be indulged in favor of the constitutionality of a statute. *Id.* If there are two possible interpretations of a statute, only one of which renders it unconstitutional, this Court must give the statute the interpretation that renders it constitutional, unless the constitutional infirmity is shown beyond a reasonable doubt. *Calvey v. Daxon*, 2000 OK 17, ¶24, 997 P.2d 164, 170.

## IV. ANALYSIS

¶7 Article V, Section 33 of the Oklahoma Constitution requires that *revenue bills*

---

1. 2017 Okla. Sess. Laws 1292 (effective November 1, 2017) (to be codified at 47 O.S. Supp. 2017, 1132.7, 69 O.S. Supp. 2017, 1501).

must originate in the House of Representatives, must be passed by a three-fourths (3/4) vote of each house of the Legislature or be submitted to a vote of the people, are not subject to the emergency measure provision, and may not be passed within the last five days of session. Okla. Const. art. V, 33 (2011). This Court has customarily stated that (1) " '[r]evenue laws' are those laws only whose principal object is the raising of revenue, and not those under which revenue may incidentally arise," and (2) " '[r]evenue bills' are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue" *Leveridge v. Okla. Tax Comm'n*, 1956 OK 77, ¶8, 294 P.2d 809, 811; *see also Naifeh v. State ex rel.Okla.Tax Comm'n*, 2017 OK 63, ¶17, 400 P.3d 759. "[W]hether a measure is 'intended to raise revenue,' must be the overarching consideration in determining whether a measure is a 'revenue bill.' " *Naifeh*, 2017 OK 63, ¶42, 400 P.3d 759 (emphasis added). This is so because the answer to whether a measure 'levies a tax in the strict sense' is in part determined by our answer to whether the measure's primary purpose is to raise revenue; since a key difference between a tax and fee is the purpose behind the assessment. *Naifeh*, 2017 OK 63, ¶43, 400 P.3d 759.Thus, while we ask both whether the measure is intended to raise revenue *and* if it is a levy of taxes in the strict sense of the word, the first question is the overarching consideration in determining whether a measure is a *revenue bill. Naifeh*, 2017 OK 63, ¶42, 400 P.3d 759.

■ ¶ 8 Here, H.B. 1449 did not follow the requirements of Article V, Section 33, as it was passed in the last five days of session with less than a three-fourths (3/4) majority vote; making it unconstitutional if it is a *revenue bill* subject to Section 33. Therefore the question to be determined is whether H.B. 1449 is the type of measure "intended to raise revenue" that the people mandated be enacted only through a legislative super-majority or popular vote.[2] Whether H.B. 1449 is subject to the strictures of Article V, Section 33 depends on whether its "principal

object is the raising of revenue" and whether it "lev[ies] taxes in the strict sense of the word. *Leveridge*, 1956 OK 77, ¶8, 294 P.2d at 811.

¶ 9 Respondents contend that there is a growing segment of electric-drive and hybrid-drive vehicles using the road while paying little or no fuel tax to contribute to road maintenance. Respondents argue that drivers of gasoline-powered vehicles are therefore effectively subsidizing the electric-drive and hybrid-drive vehicle drivers' use of the State's roads. Respondents state that the $100 electric-drive vehicle registration fee is proportionate with the amount of taxes gasoline-vehicle drivers generally pay. Respondents assert that the lesser registration fee for hybrid-drive vehicles takes into account the fact that hybrid-drive vehicles use some gasoline and thus hybrid-drive vehicle drivers pay some gasoline taxes. Respondents thus argue that H.B. 1449 is not a *revenue bill* because (1) it imposes a "prototypical user fee" rather than levying a tax, and (2) it does so for the purpose of equalizing the financial burden of maintaining the State's transportation infrastructure. We address these arguments in reverse in order to follow the test laid out by this Court.

### A. Principal Object

■ ¶ 10 First, and most important, we must determine whether the principal object of H.B. 1449 is the raising of revenue or if it is a bill under which revenue incidentally arises. *Naifeh*, 2017 OK 63, ¶42, 400 P.3d 759. In evaluating a measure's object or purpose, we must look to its actual operation and effect, not simply to what the Legislature says it is accomplishing. *Torres v. Seaboard Foods, LLC*, 2016 OK 20, ¶21, 373 P.3d 1057, 1068. The title of H.B. 1449 states it is:

[a]n Act relating to motor vehicle registrations; creating the *Motor Fuels Tax Fee*; establishing fee as a registration fee for certain types of vehicles; providing fee amount; clarifying circumstances and manner in which fee should be paid; making

---

2.  *Naifeh*, 2017 OK 63, ¶20, 400 P.3d 759 ("[W]e must evaluate [the bill] to determine whether it is the type of measure 'intended to raise revenue'

that the people have mandated be enacted only through legislative super-majority or popular vote.").

fee a prerequisite to licensing and registration; apportioning fee revenue; defining terms; amending 69 O.S.2011, Section 1501 which relates to the State Highway Construction and Maintenance Fund; allowing fund to receive certain expenditures; providing for codification; and providing an effective date.

2017 Okla. Sess. Laws at 1292 (emphasis added). H.B. 1449 contains three sections. The first section is a codification of new law. It states:

A. In addition to other vehicle registration fees specified by law, for the year beginning January 1, 2018, and for each year thereafter, there is hereby levied and there shall be paid to the Oklahoma Tax Commission a Motor Fuels Tax Fee of:

1. One Hundred Dollars ($100.00) upon every electric-drive motor vehicle to be registered; and

2. Thirty Dollars ($30.00) upon every hybrid-drive motor vehicle to be registered. The fee shall accrue and shall be collectible upon each electric-drive motor vehicle and hybrid-drive motor vehicle under the same circumstances and shall be payable in the same manner and times as apply to vehicle registrations under the provisions of the Oklahoma Vehicle License and Registration Act; provided the fee shall be paid in full for the then current year at the time any electric-drive motor vehicle or hybrid-drive motor vehicle is first registered in a calendar year. B. The collection and payment of the fee specified in this section shall be a prerequisite to licensing or registration of any electric-drive or hybrid-drive motor vehicle.

C. Revenue from the fee provided for in subsection A of this section shall be deposited in the State Treasury to the credit of the State Highway Construction and Main-

tenance Fund created in Section 1501 of Title 69 of the Oklahoma Statutes.

*Id.* It goes on to define what electric-drive and hybrid-drive motor vehicles are in Subsection D. *Id.*

¶ 11 Therefore, Section 1 of H.B. 1449 creates an assessment, known as the *Motor Fuels Tax Fee*, that citizens who own the specific types of vehicles will be required to pay, provides the manner and method for payment, requires the payment as a prerequisite to licensing or registering such vehicles to drive, and provides for the revenue raised by the fee to go to a specific fund. Within the first section of H.B. 1449, there is no stated regulatory purpose or intent to support Respondent's contention that this is an equalization measure to make up for lost gasoline taxes or to explain the reason for the specific amount of the fees.

¶ 12 In Section 2, the bill amends Title 69, Section 1501(a) [3] and creates Section 1501(c) which states: "Of the monies deposited in the State Highway Construction and Maintenance Fund pursuant to the apportionment of Motor Fuels Tax Fees provided in Section 1 of this act, the lesser of Ten Thousand Dollars ($10,000.00) and one and one-half percent (1 1/2%) of such monies *may be used* for the development and maintenance of alternative fuel corridors as defined by the Federal Highway Administration." 2017 Okla. Sess. Laws at 1293 (emphasis added).[4] This does not impose an obligation to create or maintain an alternative fuel corridor, or require the funds to be used for that purpose in any way. It also places no restrictions or guidance on the rest of the funds placed into the State Highway Construction and Maintenance Fund. Within the second section of H.B. 1449, there is also no stated regulatory purpose or intent to support Respondent's contention that this is an equalization measure to make up for lost gasoline taxes or to

---

**3.** H.B. 1449 amends Section 1501(a) to additionally say: "The fund shall also consist of revenues specifically apportioned to such fund by provisions of the Oklahoma Statutes." 2017 Okla. Sess. Laws at 1293.

**4.** Alternative fuel corridors are routes along national highway system corridors that designate availability of refueling or recharging accommodations, for electric, hydrogen, propane, and nat-

ural gas vehicles, by means of signs similar to existing signage for fuel, food, and lodging. *See* Press Release, U.S. Dep't of Transp. Fed. Highway Admin., *Federal Highway Administration Unveils National 'Alternative Fuel and Electric Charging' Network* (Nov. 3, 2016), https://www.fhwa.dot.gov/pressroom/fhwa1656.cfm (last visited Oct. 23, 2017).

explain the amount of the assessment. Finally, Section 3 simply states an effective date of November 1, 2017. *Id.*

¶ 13 Respondents state that H.B. 1449 is for the purpose of equalizing the financial burden of maintaining the State's transportation infrastructure consistent with our "mileage tax" cases. *Ex parte Tindall,* 1924 OK 669, 102 Okla. 192, 229 P. 125; *Ex parte Sales,* 1924 OK 668, 108 Okla. 29, 233 P. 186; *Pure Oil Co. v. Okla. Tax Comm'n,* 1936 OK 516, 179 Okla. 479, 66 P.2d 1097. However, the "mileage tax" cases all applied to commercial enterprises using the road *for profit,* not to individuals as "fees" in lieu of another tax, and the fees there were incidental to another purpose than raising revenue.

¶ 14 In *Ex parte Tindall,* the Court looked at an act for the purpose of regulating and controlling motor vehicles operating as common carriers for hire and profit over the public highways and that conferred on the Corporation Commission the powers to supervise, regulate, and control such common carriers. 1924 OK 669, ¶0 (1), 102 Okla. 192, 229 P. at 125. Within the act, it provided for a mileage tax to be paid by the motor carriers for the maintenance of the public highways, with requirements to make monthly reports on trips made. *Id.* ¶18, 229 P. at 130. This Court determined that because the real purpose of the act was to regulate the use of public highways by transportation companies, the requirement of a tax or fee for the privilege of operating their business was incidental to the regulations and was not void under Article V, Section 33 of the Oklahoma Constitution. 1924 OK 669, ¶0 (15), 102 Okla. 192, 229 P. at 127.

¶ 15 In *Ex parte Sales,* this Court looked at the same provision in the *Tindall* case again being specifically challenged under Article V, Section 33. 1924 OK 668, 108 Okla. 29, 233 P. 186. There we determined that the act was "one for the purpose of regulating a growing effort, on the part of *certain enterprises,* to appropriate the public highways to their own free use as a 'transportation roadbed' *for hire and profit,* to the inconvenience and detriment of the public." *Id.* ¶7, 233 P. at 187 (emphasis added). We stated that "such fee or tax [required to be paid by the operators of the transportation lines was] merely incidental to the attainment of the real purpose of the act." *Id.* Finally, in *Pure Oil Co.,* there was a challenge to a tax for *use of the highways by commercial enterprises.* 1936 OK 516, 179 Okla. 479, 66 P.2d 1097. This Court again said that "the real purpose of such an act [was] to regulate the use of the highways, instead of raising revenue." *Id.* ¶10, 66 P.2d at 1100.

¶ 16 Unlike the mileage tax cases, which only applied to private or commercial carriers using the State's roads *for profit,* H.B. 1449 applies to all citizens of the State of Oklahoma who own an electric-drive or hybrid-drive vehicle. Also unlike the mileage tax cases, the Legislature did not create additional regulations or state any purpose or intent within H.B. 1449 other than to raise revenue. The actual operation and effect of H.B. 1449 creates the *Motor Fuels Tax Fee* for electric-drive and hybrid-drive vehicles and uses that money to fund the State Highway Construction and Maintenance Fund. The name, *Motor Fuels Tax Fee* is the *only* insight that this bill is intended as an alternative to the Motor Fuels Tax paid by gasoline-drive vehicles under Title 68, Section 500.4.[5]

---

5. Section 500.4 is the Tax Imposed on Use or Consumption of Compressed Natural Gas, Gasoline, and Diesel Fuel in State. It states:

A. A tax is imposed on all gasoline, compressed natural gas, liquefied natural gas and all diesel fuel used or consumed in this state as follows:
1. Gasoline, sixteen cents ($0.16) per gallon;
2. Diesel fuel, thirteen cents ($0.13) per gallon;
3. Compressed natural gas, five cents ($0.05) per gasoline gallons equivalent (gge) until the credit authorized pursuant to the provisions of paragraph 1 of subsection A of Section 2357.22 of this title expires. Upon the expiration of the credit authorized pursuant to the provisions of

paragraph 1 of subsection A of Section 2357.22 of this title, the rate of tax imposed upon compressed natural gas shall be equal to the tax rate imposed on diesel fuel using gasoline gallons equivalent (gge); and
4. Liquefied natural gas, five cents ($0.05) per diesel gallon equivalent (dge) until the credit authorized pursuant to the provisions of paragraph 1 of subsection A of Section 2357.22 of this title expires. Upon the expiration of the credit authorized pursuant to the provisions of paragraph 1 of subsection A of Section 2357.22 of this title, the rate of tax imposed upon liquefied natural gas shall be equal to the tax rate imposed on diesel fuel using diesel gallon

Further, the money collected is hardly incidental to the purpose, when the imposition of the new financial burden is the avowed aim of the measure. *Naifeh*, 2017 OK 63, ¶35, 400 P.3d 759. It is clear that the principal object of H.B. 1449 is to raise revenue.

¶ 17 Respondents declare that "H.B. 1449 fits *Air Tulsa* like a glove." Respondents argue that H.B. 1449 is a fee similar to the fuel flow fee in *City of Tulsa ex rel. Tulsa Airport Authority v. Air Tulsa, Inc. (Air Tulsa)*, 1992 OK 146, 851 P.2d 519. In *Air Tulsa*, we determined that a fuel flow fee, assessed by the city airport authority, was a user fee and not a tax. *Id.* ¶¶5, 15, 851 P.2d at 521-22. However, contrary to Respondent's implications, the holding there as a fee rather than a tax was not based simply on the fact that the fee was assessed only against airport service users for the benefit of the airport. *Id.* ¶13, 851 P.2d at 522. Rather, the holding was determined by the fact that the Tulsa Airport was a *municipal utility*, id. ¶¶13-14, 851 P.2d at 522,[6] *subject to different regulations under our Constitution*. *Sharp v. Hall*, 1947 OK 193, ¶¶4, 8, 198 Okla. 678, 181 P.2d 972, 973-74. H.B. 1449 does not involve a municipal utility; therefore, *Air Tulsa* is not precedential. As H.B. 1449 meets the requirements of a *revenue bill* under the first, and most important question, we must continue to the second part of the test this Court follows.

### B. Levy of a Tax in the Strict Sense of the Word

¶ 18 We must therefore determine whether H.B. 1449 levies a tax in the strict sense of the word or is a bill for another purpose which incidentally creates

revenue. *Anderson v. Ritterbusch*, 1908 OK 250, ¶11, 22 Okla. 761, 98 P. 1002, 1006; *Leveridge*, 1956 OK 77, ¶8, 294 P.2d at 811. In construing a statute, our goal is to determine the Oklahoma Legislature's intent. *Heldermon v. Wright*, 2006 OK 86, ¶12, 152 P.3d 855, 859. In ascertaining the Legislature's intent, a court looks "to each part of an act, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural and absurd consequences of any particular interpretation." *Blevins v. W.A. Graham Co.*, 1919 OK 147, ¶8, 72 Okla. 308, 182 P. 247, 248. Respondents argue that H.B. 1449 is a "prototypical user fee," similar to Oklahoma's motor fuel taxes which they also claim are user fees, rather than a *revenue bill*. We disagree on both characterizations.

¶ 19 "Strictly speaking, a levy is the legislative act ... which determines that a tax shall be laid, and fixes its amount.... Levying a tax usually means the fixing of the rate at which property is to be taxed." *Olson v. Okla. Tax Comm'n*, 1947 OK 58, ¶11, 198 Okla. 607, 180 P.2d 622, 624. Whether an assessment is a tax or a fee is determined "according to the mission given it by the law under which it is levied." *Red Slipper Club, Inc. v. City of Okla. City*, 1979 OK 118, ¶4, 599 P.2d 406, 408. The determination that a measure is a regulatory fee should be made, if possible, by examining the language of the legislation. *Id.* ¶5, 599 P.2d at 408.

¶ 20 A tax is levied in order to provide revenue for support of the government or payment of public expenses [7] while a

---

equivalent (dge), which shall be equal to six and six one-hundredths (6.06) pounds of liquefied natural gas.

. . . .

68 O.S.Supp. 2014, 500.4. Section 500.2 states the intent of the Motor Fuel Tax Code is "that the taxes imposed on motor fuel have always been and continue to be declared and conclusively presumed to be a direct tax on the ultimate or retail consumer." 68 O.S.2011, 500.2(A).

**6.** "Where charges are made by and for the benefit of a *municipal utility*, the revenues raised are not taxes." *Air Tulsa*, 1992 OK 146, ¶14, 851 P.2d at 522 (emphasis added).

**7.** A tax is a forced burden, charge, exaction, imposition, or contribution assessed in accordance with some reasonable rule of apportionment ... to provide public revenue for the support of the government, the administration of law, or the payment of public expenses. Any payment extracted by the state ... as a contribution toward the cost of maintaining governmental functions, whether the special benefits derived from the[ ] performance is merged in the general benefit, is a tax.

*Olustee Co-op Ass'n v. Okla. Wheat Utilization Research & Mkt. Dev. Comm'n*, 1964 OK 81, ¶8, 391 P.2d 216, 218.

fee is enacted for other purposes.[8] Respondents claim that this Court's holdings in *In re Lee*, 1917 OK 458, 64 Okla. 310, 168 P. 53, and the "mileage tax cases,"[9] show that H.B. 1449 is a user fee that is not subject to Article V, Section 33 of the Oklahoma Constitution. We disagree as to that conclusion.

¶ 21 In *In re Lee*, we upheld a measure that required a $25 filing fee for appeals filed at this Court. 1917 OK 458, ¶0, 64 Okla. 310, 168 P. 53. We determined that the statute in question there prescribed a "fee to the public for services rendered by their officers, and is not exacted for revenue, but as compensation." *Id.* ¶32, 168 P. at 57. The revenue from the filing fee was used to compensate the court for the direct costs incurred in adjudicating the appeal and was less than the amount appropriated to pay the salaries and other expenses to maintain the court. *Id.* ¶¶20-21, 168 P. at 56. There was a direct nexus between the amount paid and the government service being provided to the payor of the fee. Further, the amount paid was proportionate to the costs of the services received.

¶ 22 As addressed *supra* in paragraphs 13-16, the revenue in the "mileage tax cases,"[10] was incidental to the main purpose of those bills, which was to regulate carriers using the road *for profit*, not to raise revenue. As part of their analysis to reach that outcome, the Court looked at the language of the bills in those cases and the **extensive regulations** that went along with the fee that would be paid. Unlike the "mileage tax cases," there are **no regulations in H.B. 1449** except to forbid registration of the vehicle if the *Motor Fuels Tax Fee* is not paid.

¶ 23 Unlike many of the above fees and contrary to Respondent's claims, the gasoline tax is a tax despite the fact that it

also generates revenue that is used to pay for roads and bridges. *Sanders v. Okla. Tax Comm'n*, 1946 OK 166, 197 Okla. 285, 169 P.2d 748; *City of Ardmore v. State ex rel. Okla. Tax Comm'n*, 1934 OK 224, 168 Okla. 316, 32 P.2d 728. In *Sanders*, we noted that none of the statutes in question levied a "tax upon the *use of the public highways* to be measured by the gasoline consumed." *Sanders*, 1946 OK 166, ¶3, 197 Okla. 285, 169 P.2d at 749 (emphasis added). Title 68, Sections 659a and 660 "levied an excise tax ... upon the sale of each and every gallon of gasoline sold ...," 68 O.S.1941, 659a, 660, and Title 52, Section 331 "levied an excise tax ... upon all gasoline," 52 O.S.1941, 331. We explained that while "[i]t is true that the Legislature has provided that nearly all of the revenue derived from gasoline taxes shall be used for highway purposes[,] this is the privilege of the Legislature, and if it desired it could amend the law so that the tax could be devoted to other public uses." *Sanders*, 1946 OK 166, ¶3, 197 Okla. 285, 169 P.2d at 749. Like the statutes in *Sanders*, our current Motor Fuel Tax Code, 68 O.S. Supp. 2014, 500.1—500.63, does not levy a tax on the use of the public highway to be measured by the use of the gasoline consumed, rather it is a tax upon use or consumption of the fuel itself,[11] and the Legislature could choose to devote the tax to other public uses.

¶ 24 The *Motor Fuels Tax Fee* functions as a "payment exacted by the state ... as a contribution toward the cost of maintaining governmental functions, where the special benefits derived from th[e] performance [of the function] is merged in the general benefit," which we have said, "is a tax." *Olustee Co-op. Ass'n*, 1964 OK 81, ¶8, 391 P.2d at 218; *Naifeh*, 2017 OK 63, ¶45, 400 P.3d 759. "[T]he distinguishing characteristic of a fee is that it is an amount paid in

8. Typically fees correspond to regulations and are compensation for the regulatory service. *Ex parte Fuller*, 1925 OK CR 422, 31 Okla.Crim. 289, 293, 238 P. 512, 513; *accord In re Lee*, 1917 OK 458, ¶32, 64 Okla. 310, 168 P. 53, 57. Fees should be closely tied to the cost of the service for which they are imposed. *Red Slipper Club, Inc.*, 1979 OK 118, ¶¶2-6, 599 P.2d at 408-09

9. *Ex parte Tindall*, 1924 OK 669, 102 Okla. 192, 229 P. 125; *Ex parte Sales*, 1924 OK 668, 108

Okla. 29, 233 P. 186; *Pure Oil Co.*, 1936 OK 516, 179 Okla. 479, 66 P.2d 1097.

10. *Ex parte Tindall*, 1924 OK 669, 102 Okla. 192, 229 P. 125; *Ex parte Sales*, 1924 OK 668, 108 Okla. 29, 233 P. 186; *Pure Oil Co.*, 1936 OK 516, 179 Okla. 479, 66 P.2d 1097.

11. *Supra* note 5.

exchange for a *specific government-provided service*, whereas a tax is 'a forced ... extraction assessed in accordance with some reasonable rule of apportionment.'" *Naifeh*, 2017 OK 63, ¶45, 400 P.3d 759 (emphasis added). Here, the amount of the *Motor Fuels Tax Fee* is not tied to the cost of the benefits conferred as the *Motor Fuels Tax Fee* is the same whether the owner of an electric-drive or hybrid-drive vehicle drives 16,000 miles a year on Oklahoma roads or none. In other words, there is no direct nexus between the *Motor Fuels Tax Fee* and the government benefit being conferred on the payor. A taxpayer who pays the *Motor Fuels Tax Fee* may never drive on the road, or may drive only a small fraction of miles each year, making their assessment effectively higher per mile than gasoline-drive vehicles bringing the reasonableness of the apportionment into question as well.

¶ 25 None of this is to say that the Legislature cannot place a tax on electric-drive and hybrid-drive vehicles to further a goal of equalizing the burdens of road maintenance. But, if the Legislature wishes to do so, "it must comply with Article V, Section 33 because the people have insisted that legislative measures 'intended to raise revenue'—i.e., those whose primary effect is to reach into the people's pockets to take more money to fund state government—be significantly more difficult to enact than other types of legislation." *Naifeh*, 2017 OK 63, ¶36, 400 P.3d 759. The *Motor Fuels Tax Fee* is not a fee to cover a regulatory program, as there is no regulation provided here except the requirement of payment in order to register the vehicle in Oklahoma. H.B. 1449 clearly levies a tax in the strict sense of the word and the incurred revenue from it is not incidental to its purpose.

## V. CONCLUSION

¶ 26 H.B. 1449 has a principal object of raising revenue and levies a tax in the strict sense of the word, it is not for another purpose which incidentally creates revenue. Thus, it is a *revenue bill* under the strictures of Article V, Section 33 of the Oklahoma Constitution. H.B. 1449 was passed in the last five days of the legislative session and did not receive the support of three-fourths of the membership of the Oklahoma Legislature. Thus, its passage did not conform to the mandates of Article V, Section 33 and it is unconstitutional. For these reasons, we grant Petitioner's request for declaratory relief. Any petition for rehearing must be filed by 5 p.m. on Friday, October 27, 2017. If no petition for rehearing is filed by that deadline, this opinion shall be final.

**ORIGINAL JURISDICTION ASSUMED; DECLARATORY RELIEF GRANTED.**

Combs, C.J., Kauger, Watt, Edmondson, and Colbert, JJ., concur;

Wyrick, J., concurs in judgment;

Gurich, V.C.J., Winchester (by separate writing), and Reif, JJ., dissent.

WINCHESTER, J., with whom GURICH, V.C.J. and Reif, J., join, dissenting:

I respectfully dissent. I would find HB 1449, assessing a fee of $100 for electric driven cars and $30 for Hybrid driven cars, constitutional as a measure designated to equalize the burden of maintaining Oklahoma's roads and highways.

This Court in *Naifeh v. State*, 2017 OK 63, ¶17, 400 P.3d 759, established a two part test: "bills for raising revenue" are those whose principal objective is to raise revenue and not those under which revenue is incidentally raised, and which levy taxes in the strict sense of the word. *Naifeh* found a cigarette fee that generated $215 million dollars with funds going to various state agencies without specifically designating their purpose, unconstitutional. *Naifeh v. State*, 2017 OK 63, 400 P.3d 759

In 2016, motor fuel taxes generated $473,585,031. The fees generated by electric or hybrid driven cars are anticipated to generate $4 million. The legislature determined a gasoline driven vehicle generated $123 per vehicle in gasoline taxes. They, conservatively, established an electric driven car fee of $100 and a fee of $30 for hybrid driven cars.

The fees are to go to the State Highway Construction and Maintenance Fund to com-

pensate the dollars required to maintain Oklahoma roads and highways, the same roads used by electric and hybrid driven vehicles. The fee is a fair exchange for this maintenance. There is a direct correlation between the fee the state charges and the benefit these vehicles receive.

The Legislature is charged with establishing the policies of the state and their actions are presumed constitutional. They must be given some leeway when circumstances change to address maintenance of our highways. I would hold HB 1449, the electric/hybrid car fee, constitutional.